## List *versus* Rodney *et al.*

1. In the devolution of estates the law presumes that the possibility of bearing children exists, even when a woman has passed the age to which the ability to do so usually continues.

2. A testator devised land to "my daughter S. * * *, to be held by her husband in trust for her children." By a codicil he provided as follows : " In item (2) of my will the devise to my daughter S. and to her children is intended and shall give to her children living at her death and to the lawful issue of any of them if dead, in right of such one deceased, and to their heirs for ever, the real estate so devised and for want of such issue living, then that the real estate so devised to my daughter S. shall go to and vest in her husband during his natural life. * * *" S. had two children at the date of the will, one of whom afterwards died without issue. Two children were born after that date, one of whom also died without issue. S. and her husband (both then past seventy-five years of age) and the two surviving children, both *sui juris* and unmarried, contracted to sell the land. The purchaser refused the title and a case was stated for the opinion of the court.

*Held,* that S. took a life-estate with a contingent remainder in the surviving children.

*Held,* that if either of these children should die, leaving issue, during the life of S., such issue would not be barred by the deed of their parent, and that if other children should be born to S. and survive her, they would be entitled to a share in the estate.

*Held,* that the law would not consider the physical impossibility of S. bearing children after she had reached the age of seventy-five years, and therefore the title tendered to the purchaser was not a marketable title.

February 15th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county :* Of January Term 1877, No. 108.

This was a case stated in which John Rodney, in his own right and in right of his wife, and as trustee under the will of James S. Duval, Sarah Rodney, his wife, James Duval Rodney and Louisa C. Rodney were plaintiffs, and J. Frederick List was defendant. The action arose out of a sale of a piece of ground by the plaintiffs to the defendant, a deed for which the defendant refused to accept on the ground of a defect in the plaintiffs' title. The case stated was as follows :—

" James S. Duval, the father of Mrs. Sarah Rodney, died in the year 1842, having first made his will, dated March 18th 1842, and

a codicil thereto, dated March 22d 1842, duly proved April 19th 1842, at Philadelphia, in and by which will and codicil he devised and bequeathed, *inter alia*, as follows:—

"(Second clause of will.)   'To my daughter, Sarah Rodney, I bequeath the house in Germantown, in which she with her husband, John Rodney, now resides; also, the house and grounds adjoining the aforesaid, purchased by me of the late John McClune's heirs; also, one-half of my store in Market street, Philadelphia, lying east of No. 179 on said street; also one-half of my store in Commerce street, adjoining No. 179 on the north-east, together with the house at the corner of Tenth and Filbert streets, Philadelphia; the aforesaid properties to be held by her husband, John Rodney, whom I hereby appoint trustee, in trust for her children.'

"(And by codicil to will.)   'Also, that in item number (2) of my said will the devise to my daughter, Sarah Rodney, and to her children is intended and shall give to her children living at her death and to the lawful issue of any of them if dead, in right of such one deceased, and to their heirs for ever, share and share alike, the real estate in the said clause of my will so devised and for want of such issue living then that the real estate so devised to my daughter, Sarah, shall go to and vest in her husband during his natural life for his own use and benefit, subject to the trusts in the said clause mentioned.'

"Sarah Rodney was, at the date of the making of said will and codicil, married to the Reverend John Rodney, and had at that time two children, James Duval Rodney, one of the plaintiffs, and Sarah Rodney, who died in 1859 unmarried and without issue; and since the date of the will there have been born two children, Louisa C. Rodney, another of the plaintiffs, and Kate Rodney, who died in 1845 unmarried and without issue.

"Both John Rodney and Sarah Rodney are now upwards of seventy-five years of age.   James Duval Rodney and Louisa C. Rodney are the only children of John and Sarah Rodney now living, and they are both *sui juris*, unmarried and without issue.

"On May 8th 1874, the plaintiffs and J. Frederick List entered into a contract in writing, under seal, by which they agreed to sell, and the said J. Frederick List agreed to buy, a lot of ground in the Twenty-second ward of Philadelphia, described, &c., with the appurtenances, for the price of $600; and List further covenanted to pay the said sum of $600, upon the execution and delivery of a sufficient deed conveying to him a good and marketable title in fee simple to the above-described lot of ground.

"On December 27th 1875, in pursuance of this agreement, John Rodney, in his own right and in right of his wife, and as trustee under the will of James S. Duval, deceased, Sarah, James Duval and Louisa C. Rodney, executed and tendered to List a deed in fee for the lot of ground above described.

[List v. Rodney.]

"List expressed his willingness to perform his contract, in case the plaintiffs could make him a good and marketable title in fee simple to the premises; but he refused to accept the title tendered, alleging that the plaintiffs, either or all of them together, did not have a title in fee to said premises, and could not make a good and marketable title in fee simple thereto according to the terms of the agreement.

"If it be the opinion of the court that the plaintiffs can make a good and marketable title in fee simple to the above premises, then judgment to be entered for the plaintiffs for the sum of $600 ; otherwise, judgment to be entered for the defendant. The costs to follow the judgment, and either party may sue out a writ of error to the next term of the Supreme Court, without oath or bail."

The court below entered judgment for the plaintiffs, to which the defendant took this writ of error.

*E. Coppee Mitchell*, for the plaintiff in error.—If there are or may be parties, not now before this court, who may be heard hereafter, this court will not compel us to take the plaintiffs' title : Doebler's Appeal, 14 P. F. Smith 17.

Mrs. Rodney did not take a fee simple under the will, for the limitation is to her "and to her children :" White *v.* Williamson, 2 Grant 253 ; Coursey *v.* Davis, 10 Wright 25 ; Smith's Estate, 9 Phila. 348 ; Tyler *v.* Moore, 6 Wright 374 ; Guthrie's Appeal, 1 Wright 9, which overruled the earlier cases, and decided that "children" is seldom or never a word of limitation. Shoemaker *v.* Huffnagle, 4 W. & S. 437, and Haldeman *v.* Haldeman, 4 Wright 29, are the only cases not overruled in which the contrary was held ; but these cases are clearly distinguishable from this case. An almost unbroken current of authority from Clayton *v.* Clayton, 3 Binn. 476, to Taylor *v.* Taylor, 13 P. F. Smith 481, shows that "children" is a word of purchase.

Mrs. Rodney did not take an *estate tail*, as she had children living at the date of the will : Wild's Case, 6 Coke 17 ; Cote *v.* Von Bonnhorst, 5 Wright 243.

Nor can an estate tail be raised by implication from the words "for want of such issue living," for the interposition of the remainder in fee to her children forbids such a construction : Curtis *v.* Longstreth, 8 Wright 297 ; Sheets's Estate, 2 P. F. Smith 257.

The true interpretation of the will gives a life-estate to Mrs. Rodney with a *contingent* remainder to her children. Suppose a child of Mrs. Rodney should die in her lifetime, leaving issue, and then Mrs Rodney should die, would the issue of the deceased child take by force of this will, or by descent from its parent ? To read the clause is to answer the question : clearly not by descent. It follows that the present children of Mrs. Rodney have *contingent* interests now, which depend upon their surviving their mother,

unless violence is done to the intention of the testator, expressed in unambiguous words : Abbott *v.* Jenkins, 10 S. & R. 298. Womrath *v.* McCormick, 1 P. F. Smith 504, is an extreme case and is not parallel to this case. The decision there rested upon the circumstance that the intention of the testator was to express the time when the estates of his children were to vest in *possession*, not in *interest*. And further, in that case the limitation was to the testator's own and only heirs; here it is to only a part of the testator's heirs. McBride *v.* Smyth, 4 P. F. Smith 245, is in point.

But even if the remainder be vested, *being to a class*, it will open and let in after-born members of the class : Minnig *v.* Batdorff, 5 Barr 503; Ross *v.* Drake, 1 Wright 373; and the law will not consider the physical impossibility of the birth of children in any case : 2 Bl. Com. *125; Jee *v.* Audley, 1 Cox 324.

*Inman Horner* and *S. Davis Page*, for the defendants in error.—Mrs. Rodney's children now living take vested remainders in fee : Wager *v.* Wager, 1 S. & R. 374; Minnig *v.* Batdorff, 5 Barr 503; Manderson *v.* Lukens, 11 Harris 31; Womrath *v.* McCormick, 1 P. F. Smith 504; Ross *v.* Drake, 1 Wright 373; Fetrow's Estate, 8 P. F. Smith 424; Fassit's Estate, 2 Weekly Notes 571; Mull *v.* Mull, Id. 538.

Perhaps these estates in Duval and Louisa Rodney may be divested by or on their death during the life of Sarah without leaving issue them surviving; but the fee in them is perfectly good until so divested, and the only persons to be benefited in that event are the husband of Sarah and those who take under the limitation to which his estate is subject, viz., the heirs of Sarah, or the heirs of her children.

But that contingency does not present any obstacle to the vesting of the estate in remainder in the first instance.

Whether the trust in the second clause of the will be for Sarah and her children, or for "her children" only, and the limitations in the codicil be explanatory of the character of their estate, rather than of Sarah's, is not material to the argument, because, if "the children" be presented as the new root, and the final limitation be to those who would be capable of taking from and under them in the event of their death in the lifetime of their mother, without leaving issue at her death, yet as those who would be capable of taking from or under them must be their legal representatives, "their heirs and assigns," any alienation by them made would bar such claim. The final limitation is contingent on failure of issue on the death of Sarah, and only enures to the benefit of her heirs, or of her children's heirs; in either case those who take under it are bound by the acts of Sarah and her children—"*haeres est pars antecessoris.*"

The title offered to List would appear to be open to attack, only

[List *v.* Rodney.]

from any child or children that may hereafter be born to Sarah and her husband, both being now upwards of seventy-five years of age.

While admitting that as long as life remains, the legal possibility of issue continues, and that in the eye of the law Sarah may have a child, yet the possibility of such an event in the eye of reason is so remote that no man of common sense would esteem it as within the range of probability.

Under the contract for the sale of this real estate, the vendee has the right to have conveyed to him a good and marketable title—one that is not doubtful. "But the doubts which will operate in a court of equity are not doubts made up for the occasion, nor based on captious, frivolous and astute niceties, but such as produce real, bonâ fide hesitation in the mind of the chancellor. The doubts must, in the language of Lord Eldon, be ' considerable and rational,' such as would and ought to induce a prudent man to pause and hesitate in the acceptance of a title affected by them :" Judge King, in Dalzell *v.* Crawford, 1 Parsons's Select Equity Cases 37. See Kilpatrick *v.* Commonwealth, 7 Casey 204, and Anshutz *v.* Miller, 2 Weekly Notes 547.

In answer to the argument of the plaintiff in error, counsel argued:

Under the second clause of the will the devise is " to my daughter, Sarah Rodney, * * * to be held in trust for her children ;" Mrs. Rodney had two children living at the time of making the will. The case of White *v.* Williamson, 2 Grant 253, decided that " a deed to A., for the use of the wife and children of B., conveys a life-estate to the wife of B. with remainder to her children ;" and in Coursey *v.* Davis, 10 Wright 29, it was held that " a conveyance to a married woman and her children exclusively, and their heirs and assigns," gave a life-estate to the woman, and a vested estate in remainder to the children as a class, so that those in being at the date of the will, as well as those subsequently born, would be entitled on the termination of the life-estate.

It is submitted that these cases govern the construction of the 2d clause, and that an examination of all the decisions where similar words are used will establish beyond doubt that the only construction of which they are capable is—estate for life to Mrs. Rodney, vested remainder in fee to the children as a class.

Then as to the codicil, which is merely explanatory : the testator starts by reiterating in the same, but more concise, language, the devise in the will; " also, that in item No. (2) of my will, the devise to my daughter, Sarah Rodney, and to her children, is intended and shall give to her children living at her death and to the lawful issue of any of them, if dead, in right of such one deceased," &c.

It is contended by the plaintiff in error that this definition, and the use of the words "living at her death," make the remainder to

[List *v.* Rodney.]

the children contingent, and defer its vesting until the children living at the death are ascertained by the death of Mrs. Rodney, and that the issue of any deceased child surviving Mrs. Rodney would take directly under the will, and not by descent from its parent.

The rule on the subject as laid down in Hawkins on Wills 237, is: "It has long been an established rule that all estates are to be holden to be vested, except estates in the devise of which a condition precedent to the vesting is so clearly expressed that the court cannot treat them as vested without deciding in direct opposition to the terms of the will."

Certainly in this case, where the testator has, by a clause in his will, given a vested estate to children as a class, the court will not, in construing a codicil to the will which by its own very terms is directed to be explanatory merely of that clause of the will, turn the vested estate into a contingent one.

But the clause itself shows that the testator intended that the children of Mrs. Rodney should have remainders vested during Mrs. Rodney's lifetime; for he says in the clause under consideration, "shall give her children living at her death, and to the lawful issue of any of them, if dead, *in right of such one deceased,*" showing that he contemplated such a right as existing in her children prior to Mrs. Rodney's death.

It is also respectfully submitted that the use of the words "living at her death," as interposed by the testator in the codicil, is intended to define the estate of Mrs. Rodney and to confine it to a life-interest, and not to make a condition or qualification of the estate of the children, for it must be borne in mind that nowhere else in the will is there any direction that Mrs. Rodney should have only a life-estate; it denotes the time of enjoyment of the estate of the children, not its quality: McBride *v.* Smyth, 4 P. F. Smith 245; Smith on Executory Interests 281; Abbott *v.* Jenkins, 10 S. & R. 296. The opinion of STRONG, J., in Ross *v.* Drake, 1 Wright 375, is directly in point and governs this case; Womrath *v.* McCormick, 1 P. F. Smith 504. See also Ross *v.* Drake, *supra;* Minnig *v.* Batdorff, *supra;* Manderson *v.* Lukens, 11 Harris 31; Wager *v.* Wager, 1 S. & R. 374; Mull *v.* Mull, 2 Weekly Notes 538; Fetrow's Estate, 8 P. F. Smith 424.

The only possible interest which the deed tendered to List does not convey, either directly or by way of estoppel or warranty, is an interest which a possible child of Mrs. Rodney, born after the date of the deed, might take conjointly with the other children; that is to say, if there is a possibility that another child may be born to Mrs. Rodney, then there is a possibility that this deed does not convey every interest to the lot in question, and the plaintiff in error can refuse to take the conveyance. Mrs. Rodney is over seventy-five years of age.

[List *v.* Rodney.]

The doctrine laid down in 2 Bl. Com. *125, occurs in, the chapter on Estates Tail after the possibility of issue extinct. Blackstone's words are as follows : " A possibility of issue is always supposed to exist in law, * * * even though the donees be each of them an hundred years old," and he quotes Coke on Littleton 28, a, who, writing on the same subject, says, "for that the law seeth no impossibility of having children."

That doctrine means only that where land is given to a man and his wife and the issue of their bodies begotten, they having once had the probability of having issue, the law will not, for the purpose of altering the quality of the estate, fix any time for that probability of their having issue ceasing, and accordingly Coke and Blackstone lay it down that there is always a possibility of having children.

It is respectfully submitted to the court, however, that the rule of law as to "the possibility of issue" is simply a presumption governing the devolution and quality of estates, but that in a particular case where the court is asked to presume it as a question of fact from the presumption of law, they will take notice that in that particular case the so-called possibility is an impossibility.

While as applied to the general question of the quality and quantity of estate "the law seeth no impossibility," yet in a question of fact as presented here, the rule is but a presumption of fact, and just as in the case of the presumption of legitimacy, may be rebutted by showing an actual physical and moral impossibility that there can be children.

This is not a question as to whether the testator was not influenced by the age of Mrs. Rodney, as in Jee *v.* Audley, *supra*, in making the will, but it is a question of fact, viz., whether there is any possibility of a child being born to Mrs. Rodney. It is not a question of law as to the devolution of an estate such as Blackstone's rule applies to, but is a practical, not an abstract, question of probability or possibility.

Mr. Justice MERCUR delivered the opinion of the court, May 7th 1877.

The defendants in error derived title to the real estate in controversy under the will of James S. Duval. The language, in item No. 2 of the original will, is, "to my daughter, Sarah Rodney, I bequeath" (the land in question) "to be held by her husband John Rodney, whom I hereby appoint trustee, in trust for her children." By codicil thereto he further devised and declared "that in item No. 2 of my said will the devise to my daughter Sarah Rodney, and to her children, is intended and shall give to her children living at her death, and to the lawful issue of any of them, if dead, in right of such one deceased, and to their heirs for ever, share and share alike, the real estate of the said clause of my will so devised, and for want

[List *v.* Rodney.]

of such issue living, then that the real estate so devised to my daughter Sarah shall go to and vest in her husband during his natural life for his own use and benefit, subject to the trusts in the said clause mentioned."

At the time of the execution of the will and codicil Sarah Rodney had two children.   Two other children were born afterwards.   One of the former and one of the latter died unmarried and without issue.   Sarah Rodney and her husband are still surviving.   They, and the two surviving children, constitute the defendants in error. Can all of them jointly convey a good and marketable title in fee simple to the land in question ?   To maintain this action they must not only show their title to be good, but it must also be ·marketable.   The vendee is not bound to accept a doubtful title.   Every title is doubtful which exposes the party holding it to litigation : Bumberger *v.* Clippinger, 5 W. & S. 311 ; Speakman *v.* Forepaugh, 8 Wright 363 ; Doebler's Appeal, 14 P. F. Smith 9 ; Swayne *v.* Lyon, 17 Id. 436.

If under any contingency of the will there may be a devisee over, who is not a party to this suit, he would not be bound by anything we may now decide.   As then he would not be absolutely concluded by this judgment, the vendee would be exposed to the peril and annoyance of litigation from such devisee : Id.

It is true, to justify the rejection of the ·title the doubt must be considerable or rational : Stapylton *v.* Scott, 16 Vesey 272.   The possibility on which a remainder is to depend must not be too remote : Fearne on Remainders 250.   It should be a common possibility, such as death, or death without issue, or coverture or the like : Id.

Guided by these rules, we proceed to consider whether the defendants in error can now convey a title clear from such a degree of doubt as to be fatal to their recovery.

By looking at both parts of the will it is very evident that the testator intended to give to his daughter, Sarah Rodney, a life-estate only.   In the original will he gave her the property and appointed her husband trustee thereof, for her children.   This clause on its face does not clearly express the precise estate his daughter should take, nor the time when an estate should pass to her children. Under the authorities, however, the daughter would have taken a life-estate only with remainder to her children.   The case of Shirlock *v.* Shirlock, 5 Barr 367, would indicate that she might have taken that as tenant in common with them.   The later cases, however, establish that she would have taken a life-estate in the whole, with remainder to her children : White *et al. v.* Williamson *et al.,* 2 Grant 249 ; Cote *v.* Von Bonnhorst, 5 Wright 243 ; Curtis *v.* Longstreth, 8 Id. 297 ; Coursey *v.* Davis, 10 Id. 29.   That such was the testator's intent is clearly expressed in the codicil.   He therein recognises the devise previously made to his daughter and

her children, and then he declares his intent to be to "give it to her children living at her death, and to the lawful issue of any of them if dead." He does not disturb her life-estate previously given. By giving no estate to her children during her life, he manifestly gives her a life-estate in the whole, and distinctly defines the time when the remainder shall take effect. Neither the words of the codicil nor its spirit indicate a present intent to give any estate to the children *in esse ;* but an intent to give in the future. That future time was fixed. It was to be at the time of the death of his daughter. The class of persons who might at that time be living, and who answered the requirements of the will, were then to take. Until the death of his daughter he gave her children nothing. At her death he gave to such of her children as might then be living and to the lawful issue of any of them who were then dead. It is very clear that the testator did not intend to give, during the life of his daughter, any vested estate to her children *in esse* at the date of the will, nor to her subsequently-born children. If it vested in the children during the life of their mother they could alien the same or it might be taken from them by adverse process. It would be doing great violence to the whole language of the codicil to give that construction to the devise : Abbott *et al. v.* Jenkins, 10 S. & R. 296. The intention of the testator being thus made clear, the rule in Shelley's case cannot be invoked to prevent that intention from being effective. It is only after the intention has been discovered that the rule in Shelley's case can be applied. It cannot be used as a means of discovering the intention : Fearne on Contingent Remainders *188 ; Hileman *v.* Bouslough, 1 Harris 351 ; Doebler's Appeal, 14 P. F. Smith 9 ; Yarnall's Appeal, 20 Id. 335.

It is true in doubtful cases, the construction should be in favor of vested, in preference to contingent, remainders, but it does not seem to us that sufficient doubt exists in this case to give it that effect. The case of Womrath *v.* McCormick, 1 P. F. Smith 504, has been cited to prove the estate was vested as to the children *in esse* at the execution of the will. That case, however, is distinguishable in several respects from this. There, the devisees in remainder were all *in esse* and ascertained. They were the children of the devisor. There was nothing contingent as to the interest devised, more than always exists as to the immediate remainderman. That is, he must outlive the particular tenant for the estate to vest in possession. There the testator gave the "rents, income and interest" of all his estate, real and personal, to his wife during her life, and directed that upon her death it should be valued and divided into as many parts as he should then have children living, the issue of any deceased child to represent their respective parent or parents. There the devise was to all the children of the testator. Not so the present case. Here the devise of the life-estate was to one only of his several children, and the remainder to the children

of that child only.   Here the interest which the children *in esse* should take depended upon the contingency of children being subsequently born.   There is no gift to the whole class of children before the mother's death.   Here is not merely the postponement of a division of the estate until the death of the life-tenant; but the remaindermen cannot be known until the time arrives to designate them.   Prior to that time it is necessarily contingent so far as relates to the persons who are to take :   Smith on Executory Interests 281; McBride *v.* Smyth, 4 P. F. Smith 245.

If we are correct in the views expressed two conclusions follow :—

1. If any of the children now living should die during the life of their mother, leaving lawful issue, the title of such issue will not be barred by the deed of their parent.

2. If other children should be born and survive their mother, they will be entitled to share in the estate.   This cannot be denied. It is contended, however, that the advanced age of Mrs. Sarah Rodney precludes such an event.   We may concede that she has passed the age to which the ability to bear children usually continues ;   yet the law appears to have settled that there is no age beyond which it is impossible.   " A possibility of issue is always supposed to exist in law * * * even though the donees be each of them an hundred years old :" 2 Blackstone's Com. *125.   " For that the law seeth no impossibility of having children :" Coke on Littleton 28, a.   Whether the rule rests upon the indelicacy of the acts to which such an inquiry might lead, or to the great uncertainty of arriving at an accurate conclusion, we know not ; but certain it is, the rule has stood the test of time, and received the sanction of ages.   No case has been cited showing that it has ever before been questioned in Pennsylvania.   Nature has fixed no certain age, by years, at which a child-bearing capacity shall begin or end.   Any conjecture based on age is too doubtful and uncertain to result in any reliable conclusion.   It was well said in Jee *v.* Audley, 1 Cox 324, " if this can be done in one case it may in another, and it is a very dangerous experiment, and introductive of the greatest inconvenience to give a latitude to such sort of conjecture."

It is contended that this doctrine of possibility of issue is only applicable to cases of estate tail after possibility of issue extinct; that it is simply a presumption governing the devolution and quality of estates, and that it should not be presumed when the facts show it to be impossible.   This argument is fallacious.   The very question before us is whether the possibility of issue is extinct.   It affects the transmission of the estate.   It diminishes the interests which the children now living may take.   The presumption of law is in favor of issue, notwithstanding advanced age.   It is a presumption of law on the very fact, which we are requested to say destroys the presumption.   The argument makes a conjectural conclusion

rest on a fact, when the law declares no such conclusion shall be deduced from that fact.

The two contingencies we have considered are not too remote. They are the direct and immediate contingencies provided for by the testator, as likely to arise before the estates in remainder should vest· in his daughter's children and in their issue. Neither one is so entirely removed from doubt as to make the title of the vendors certain. They leave a cloud on the title which creates doubt and hesitation. We therefore conclude that the defendants in error cannot convey such an indubitable, marketable title as to compel its acceptance. The learned judges therefore erred in holding otherwise.

> Judgment reversed and judgment in favor of the plaintiff in error, on the case stated.