## LaMotte Estate

*Horace E. Smith* and *Robert W. Morton*, for petitioner.

*Laucks & Laucks*, for respondent.

*George M. Elsesser, Jr.*, trustee ad litem.

GROSS, P. J., May 15, 1952.—C. Samuel LaMotte, decedent, died November 17, 1931, leaving a will dated June 9, 1925, in which he created a trust by item fourth thereof, which reads as follows:

"Fourth. I direct that my hereinafter named executors shall dispose of sufficient securities or other personal property to create a trust fund of Fifty Thousand ($50,000.00) Dollars, the same to be placed in trust in the Red Lion First National Bank, the income therefrom to be paid to my said wife, Ida LaMotte, during her life time upon request by her and at such times as she may need the same. After the death of my said beloved wife the income of said trust fund shall be equally divided between my son, Stuart F. Lamotte, and my grand-son, Stuart, Jr. If I should survive my son, I direct that his share of the income should be paid to his widow, Lottie LaMotte. If there are other grandchildren in addition to Stuart, Jr., I direct that the income shall be divided among my said grandchildren, each and every one of said grand-

children to have the right and privilege to dispose of his or her proportionate share of said trust fund by will. If the same is not disposed of by will the said proportionate share shall be divided according to the intestate laws of the State of Pennsylvania. If at any time the income from said trust fund shall be insufficient to provide for the proper support and maintenance of my said wife, I direct that such part of the principal may be used for the same as the said Red Lion First National Bank as trustee shall determine."

By the fifth item, the residuary clause of his will, testator gave the residue and remainder of his estate to his son, Stuart LaMotte, Sr.

By a codicil annexed to his will, dated August 4, 1925, he reaffirmed the creation of this trust.

Decedent's wife, Ida LaMotte, predeceased him. He was survived by his son, Stuart F. LaMotte, Sr., and Stuart F. LaMotte, Jr., who now write their names Stewart F. LaMotte, Sr., and Stewart F. LaMotte, Jr., respectively, and both of whom reside in the State of Florida. Decedent left no other issue to survive him.

Decedent's son is 55 years of age and is married to Lottie LaMotte, aged 53 years, mother of the grandson and an alternate beneficiary of the income of the trust. The grandson is aged 30 years.

On November 29, 1951, the son and grandson filed their petition asking that the trust be terminated on these grounds: (1) That, because of the advanced years of the son and his wife, childbearing was impossible or highly improbable; (2) that the trust no longer carries out the purpose intended by decedent in that it does not provide an income commensurate with the amount of principal invested and is insufficient to support them, and (3) that it is a dry trust.

The trustee did not file an answer to the petition denying the averments thereof, nor does the trustee

formally object to the termination of the trust, but appeared by counsel at the hearing and orally stated for the record that it had no objection to the termination of the trust if it could be legally terminated by the court.

We appointed George M. Elsesser, Esq., trustee ad litem to represent the interests of possible unborn grandchildren of Stewart F. LaMotte. The trustee ad litem filed a composite brief and answer, in which he sets forth that the presumption of ability to procreate by the son has not been rebutted and, therefore, there are unascertained beneficiaries; but that, if the court should find that the original purpose of the trust has been defeated, the court could, nevertheless, terminate the trust, regardless of possible interests of unborn grandchildren.

Insofar as the impossibility or improbability of procreation by the son and his wife is concerned, the only testimony submitted to prove the fact is that of the son and his wife. They both testified to their ages and their impossibility of procreation. No medical testimony was adduced to support their testimony and, if there had been, this ground for termination of the trust would not of itself be sufficient. On this subject, in the case of List v. Rodney et al., 83 Pa. 483, 492, the Supreme Court summarizes the law as follows:

" 'A possibility of issue is always supposed to exist in law . . . even though the donees be each of them an hundred years old' . . . the rule has stood the test of time, and received the sanction of ages. . . . Nature has fixed no certain age, by years, at which a child-bearing capacity shall begin or end. Any conjecture based on age is too doubtful and uncertain to result in any reliable conclusion."

The above statement of the law is supported by the later decisions in Austin's Estate, 315 Pa. 449, 451;

Sterrett's Estate, 300 Pa. 123; Straus' Estate, 307 Pa. 454, 459.

However, in Appeal of Gowen, Trustee, 106 Pa. 288, the Supreme Court held that the rule laid down in List v. Rodney, supra, is a correct exposition of the law when applied to the question of ability to convey real estate by good and marketable title in fee simple, but that the distribution of a trust fund is governed by equitable principles and approved the distribution of a trust fund upon condition that the distributees deliver an obligation to the trustee to refund in case of afterborn children named as remaindermen.

In Austin's Estate, 20 D. & C. 65 (1933), Judge Gest, in an able opinion, refers to the proposition of law last stated, with apparent approval, and cited numerous cases to support it, including Gowen's appeal, supra.

His decision in that case, however, was based upon other grounds but, on appeal to the Supreme Court, reported in 315 Pa. 449, Judge Gest's opinion was adopted by the Supreme Court without any adverse criticism of the rule and we may, therefore, assume that it was not looked upon with disdain by the Supreme Court.

In Bell v. Lebanon County Trust Company, Trustee, 66 D. & C. 624 (1948), Judge Ehrgood adopts the principle and applies it to a termination of an irrevocable trust.

In relation to the second reason for the termination of the trust, that it no longer carries out its original purpose, the evidence shows that the income from the trust in the year 1936 was the sum of $2,106, or a yield of a trifle over four percent. The evidence further shows that the income gradually diminished thereafter so that in 1951 the total income was only $1,248, or a yield of approximately two and one-half

percent of the principal. This diminution of income resulted in the reduction of income received by each beneficiary from $1,053 in 1936 to $624 in 1951.

It will be observed that decedent's will does not expressly say that this trust was created for the support and maintenance of the son and grandson and, although no right to invade the principal for that purpose is granted by the will, it would be difficult to conclude that decedent had any other motive for creating the trust because at the time of the execution of his will his wife, his son and grandson were certainly the main objects of his bounty and that being so, this very substantial reduction of income from the trust must necessarily in a large measure be a defeat of the original purpose of the trust and a frustration of testator's intention in creating it.

The third and last ground advanced for the termination of this trust is that it is a dry trust. We do not agree with the proposition that it is a dry trust. The trustees are charged with the performance of active and substantial duties with respect to the control, management and disposition of the trust property and it, therefore, classifies as an active trust. See Carson v. Fuhs, 131 Pa. 256; Henderson's Esate, 258 Pa. 510; Friedheim's Estate, 344 Pa. 542; Lowitz Estate, 360 Pa. 91. However, the fact that it is an active trust does not necessarily prevent its termination.

When, then, may a trust be terminated? Judge Hunter, in his valuable Orphans' Court Commonplace Book, vol. II, page 1303, says a trust may be terminated even though it may not have ceased by expiration of time and may not have accomplished all of its purpose, if all of the interested parties are sui juris and give their consent to its termination, citing Harrar's Estate, 244 Pa. 542, and Stafford's Estate, 258 Pa.

595, as his authority for the statement. An examination of these authorities, we think fully supports his view.

In Bowers' Trust Estate, 346 Pa. 85, the Supreme Court held that, if the only unfulfilled purpose of the trust is that which a spendthrift trust or a sole and separate use trust is designed to accomplish, the settlor of an inter vivos trust may compel its termination, if all of the interested parties are ascertained and agree to such termination, but if there are contingent remaindermen whose consent could not be gotten, a court of equity would not decree its termination.

In Donnan's Trust Estate, 339 Pa. 43, Justice Linn lays down the rule in an inter vivos trust, that the requisite consent of all parties to the termination of a trust can only mean that their combined interests must be equivalent to an absolute title which cannot be defeated or diverted by the happening of any future event.

The last two cited decisions were inter vivos trusts cases but we see no good reason why the same doctrine should not be extended to include testamentary trusts. It will be noted that no consideration was given in either of these two decisions to the propriety and effect of the delivery of refunding bonds to protect and secure the rights and interests of contingent remaindermen (as illustrated by Appeal of Gowen, Trustee, supra, and Bell v. Trust Company, supra), in cases where there has been a substantial failure, as we believe there was in the instant case, of the purpose of the trust.

In Kelby Estate, 80 D. & C. 1, 8, Judge Lefever, of the Orphans' Court of Philadelphia, in an able and exhaustive opinion, points out:

" 'It has for some time been established that where the income beneficiary is the primary consideration of testator or settlor with the view of providing the comfortable maintenance of such primary beneficiary,

and, on account of the insignificance or inadequacy of the income to accomplish this purpose, the intent of the testator or settlor is frustrated, the court will terminate the trust and award the principal to the income beneficiary in order to enforce that intent, regardless of who are the remaindermen, if they be regarded as of secondary importance in the contemplation of testator or settlor: Auchu's Estate, 38 D. & C. 33 (1939), supported by A. L. I. Restatement of the Law of Trusts, Sec. 336, p. 1019; Miller's Estate, 33 Berks 89 (1940) ; and Posey Estate, 52 D. & C. 127 (1944), Honeywell Estate, 70 D. & C. 472, 474 (1950) . . .' "

"In employing the doctrine of 'failure of purpose' to strike down an oppressive trust the courts have ascribed to settlor or testator an intention (possibly more general than specific) to make adequate financial provision for the income beneficiary, and, when continuance of the trust would jeopardize fulfillment of that intention, employ their equitable powers to terminate. The instant case deserves such construction. The Auditing Judge rules, therefore, that there has been a 'failure of purpose' of the instant trust. Accordingly, the trust will be terminated.

"This case falls expressly within the language and intent of Section 2 of the Estates Act of 1947. It is the type of trust and situation which that Act was designed to relieve. But, by the express terms of Section 21 of the Estates Act, the operation of Section 2 is confined to trusts created on and after January 1, 1948. Being prospective in nature only, the Act does not apply to this trust which came into existence prior to that date. However, this Act states the public policy of Pennsylvania, as expressed by its legislature, with regard to termination of trusts. Courts may properly bear in mind expressed public policy when passing upon such matters, and where there is any doubt

frame their decisions in conformity with such public policy."

The last quoted paragraph of Judge Lefever's opinion is apropos to the instant trust.

An examination of testator's will indicates ambiguities and suggests several rather difficult problems. At the time testator executed his will his son was aged 30 years, married and the father of one son, now aged 30 years. The daughter-in-law was then only 28 years of age and, when testator said in his will "If there are other grandchildren in addition to Stuart, Jr.", he may well have been anticipating the birth of additional grandchildren and that he clearly intended that they too should benefit by the testamentary trust and that the bequest to the class should remain open until the death of Stewart F. LaMotte, Sr. See Earle Estate, 369 Pa. 52.

However, in taking a broad view of testator's will, in that the primary consideration of testator was to provide support and maintenance for his son and grandson and that there has been a substantial failure of the purpose of the trust, and in view of the modern trend of courts to lean toward practicalities in the termination of trusts and that the rights of unborn grandchildren of testator can be amply protected by a refunding bond, we conclude that this trust should be terminated. See Disston's Estate, 257 Pa. 537. We enter the following

### Decree

And now, to wit, May 15, 1952, it is hereby ordered, adjudged and decreed that the trust created by C. Samuel LaMotte, in the fourth item of his will, dated June 9, 1925, and duly probated in the Register of Wills office of York County, be and is hereby terminated upon condition, however, that Stewart F. LaMotte, Sr., and Stewart F. LaMotte, Jr., file their joint

and several refunding bond in this court, in the sum of $25,000, for a term of seven years, with surety or sureties or deposit of collateral with the trustee, to be approved by the court and First National Bank and Trust Company of Red Lion, the trustee, conditioned to refund to the trustee the principal of the trust or such part thereof as might be payable to or inure to the benefit of any child or children hereafter born to Stewart F. LaMotte, Sr. It is further ordered that the trustee shall file an account in this court, of its administration of said trust within 30 days from the date of this decree, upon the audit and confirmation of which an award of the principal of the trust will be made to Stewart F. LaMotte, Sr., and Stewart F. LaMotte, Jr.

We fix the compensation of George M. Elsesser, Esq., trustee ad litem, at the sum of $300, and direct the trustee to pay same within 10 days from the date of this decree.