## Joseph Bell et al. *v.* David M. Fulton.

---

## David M. Fulton *v.* Joseph Bell et al.

A will directed that all testator's property, including his farm, should be "retained for the use of my family, to be under the care and management of them jointly, so long as they continue together, the whole to be joint or common property," etc.; that a small allowance should be made to either daughter withdrawing; and that the survivors of any of the children dying should retain the bulk of the property so that "it may remain in the family until the death of the latest survivor." The testator left one son and four daughters. One daughter withdrew during her life and received her allowance. One daughter died intestate. The other two daughters and the son died having bequeathed their shares to the son of one of these daughters. *Held,*

1. That the will gave each child a life interest in an undivided fifth share.

2. That the daughter who withdrew thereby relinquished her life estate to the others, and, though the latest survivor, could not claim the property as such.

3. That on the death of the last of the others, all the life interests terminated; and thereupon the fee simple in remainder, not having been devised by the will, descended to the heirs at law of the testator.

(Decided November 2, 1885.)

Cross writs of error to the Common Pleas of Washington County to review a judgment in ejectment. Affirmed.

The action was brought by Joseph Bell and Mary Bell, his wife, in right of the wife, against David M. Fulton. Both husband and wife died pending the suit, and the heirs of the wife were substituted as plaintiffs. The cause was heard below, on a case stated for the opinion of the court, substantially as follows:

John Fulton died testate in the year 1832, seised in fee of the

lands in controversy in this suit.   His will, admitted to probate
in the proper office of said county of Washington, December 24,
1832, made this disposition of his property: "After all my
just debts are paid, I dispose of my worldly substance as follows,
to wit:   my farm, together with all my stock of cattle I wish
to have retained in the hands of my family for their use, to be
under the care and superintendence of my son James,—and my
household furniture of every description to be retained for the
use of my family to be under the care and management of them
jointly so long as they continue together.   The whole to be joint
or common property; and the profits arising from the farm and
other property, to be considered as the property of the family
jointly, or, so many of them as may remain in a family capac-
ity.   Should any one of my daughters, for any cause, with-
draw from the family, then, and in that case, I allow those who
may remain to pay unto such one so withdrawing the sum of
$100, and bead & bedding, a Beauraw, and a saddle.   The $100
aforesaid to be paid in payments of twenty five-dollars, an-
nually.   Should any of my childring die before the sume above
specified to be paid at withdrawing from the family should be
paid, then I allow the said sum, or so much thereof as may be
unpaid, to revert to they survivors jointly as the other property
is directed to remain, and the survivors or survivor of my chil-
dring, *viz*:   James, Anna, Margaret, Jean, and Mary, I allow
to retain the whole of my property, not otherwise herein dis-
posed of, so that them nor any of them may have the op-
portunity of disposing of the same, but that it may remain in
the family until the death of the latest survivor of them.   . . .
"I wish it to be distinctly understood that I do not allow any
part or portion of my property of any description to be sold, ex-
cepting such of my personal property as my son James may
from time to time think for the interests of the family it would
be proper to sell and then the proceeds to be applied as he may
think best for the interests of the whole."

Of the children of the testator named in the said will, James
remained on the land and died in November, 1877; Anna re-
mained on the land and died in the year 1880; Margaret
remained on the land and died in the year 1860; Jean remained
on the land (had issue, one son, David, the defendant, who has
always lived on the land and was in possession when served with
the writ in this case) and died in 1877; Mary married Joseph

Bell in 1833, immediately removed to Ohio and died there after all the other children of the said testator and after bringing this suit. The said Mary received from James, at the time of leaving the farm, all the money and goods mentioned in the said will to be given to any of the daughters leaving the farm.

James, Anna, and Jean all made wills bequeathing their several interests to the defendant, David Fulton (son of Jean), which were duly probated, true copies thereof being heretc attached as a part of this case stated. Margaret died intestate.

If the court be of the opinion that the plaintiffs are entitled under the will of John Fulton to recover all the land, in entirety, mentioned in the writ, then judgment is to be entered generally for the plaintiffs for the land in controversy. If the court be of opinion that the plaintiffs are entitled to recover an undivided interest therein, then judgment is to be entered for the plaintiffs for such undivided interest in the said lands as the court thinks they are entitled to have; otherwise judgment is to be entered for the defendant.

Upon the facts above stated, the court below rendered the following opinion:

OPINION PER HART, J.:

A careful study of John Fulton's will brings into view many perplexing questions; and no interpretation which was suggested by the learned counsel or which has occurred to my own mind is sufficient to clear up all doubts and remove all difficulties. The document is so loosely and unskilfully drawn as to be incapable of any but a merely conjectural construction.

For the plaintiffs it is claimed that, as the mother, Mrs. Bell, was the "latest survivor" of John Fulton's children, they are entitled as her heirs at law to the whole of the land in controversy. But I feel quite clear that that position is not tenable. Undoubtedly, the dominant idea in the mind of the testator, when dictating the terms of his will, was that his widow and children should remain together on the homestead farm as one family, as they had lived during his lifetime. And as every family should have a head, and as his children, with one exception, were all daughters, he substituted in his own stead his only son to be the family head; and gave him the general control of the farm and personal estate, and intrusted him, and him only, with a discretion to sell portions of the personal property,

whenever, from time to time, he might deem it best for the interests of "the family." It is, by the way, a noteworthy circumstance that the testator, probably from his knowledge of his son's habits and temperament, or, possibly, from expressed intentions or promises on James's part, seems to take for granted that he, at least, would never incline to leave the farm and move elsewhere; and accordingly he makes no provision for such a contingency. But he provides that, in case any of the daughters at any time should "withdraw from the family," then those who remain were "to pay unto such one so withdrawing the sum of $100," and they were also to give her "a bed and bedding, a bureau, and a saddle;" the $100 to be paid in four equal annual instalments. There is a further provision that, in case of the death of a daughter so withdrawing, before the whole of the $100 is paid, the unpaid portion is "to revert to the survivors jointly, as the other property is directed to remain." Then, immediately, in the same sentence, follows this provision: "And the survivors or survivor of my children, *viz:* James, Anna, Margaret, Jean, and Mary, I allow to retain the whole of my property, not otherwise herein disposed of, so that them, nor any of them, may have the opportunity of disposing of the same, but that it may remain in the family until the death of the latest survivor of them." Now, if it be assumed, as contended, that the testator's meaning is that the whole estate was to go to the child who should live the longest, without reference to whether that child had or had not withdrawn from the family, then, as he must be presumed to have had in view, among other contingencies of the future, the very one which has happened, to wit, that "the latest survivor" might be a child, and the only one of them all, who would thwart his wishes by withdrawing from the family,—it would seem that he was hardly capable of making a valid will, or otherwise he would not have so framed it as to leave more than an equal chance that it would in the end frustrate, rather than promote, what was clearly his chief purpose in making it. Evidently, then, this construction, as contended for by plaintiffs' counsel, would make the will offer a premium to the daughters for withdrawing from "the family;" which is, beyond doubt, the very thing, above all others, which the testator meant to guard against, as being contrary to his consuming desire that his children should all remain together "in a family capacity." For, if the view of counsel be correct,

then it might have so happened that the youngest daughter had retired, got her money and "outfit," as it has been called, and been relieved of the burden of helping to maintain the widow, with the "expectation of life" in her favor, that she would eventually come in, as "the survivor," as sole owner of the farm, after those who had remained faithful to the testator's wishes had passed away,—their descendants to have no share in the inheritance left by the grandfather. Such, I am well satisfied, cannot be the construction of this will.

It is claimed, on the other hand, for the defendant, that when Mrs. Bell withdrew from "the family," and removed to Ohio, she thereby forfeited her interest in her father's estate, receiving in lieu thereof $100 in money, a bed and bedding, a bureau, and a saddle, as provided in the will. It is urged in support of this view, that at the date of the will, 1832, land was much cheaper than now, while money was worth considerably more, dollar for dollar, than at present, and hence, that $100 and the "outfit," as it was called in the agreement, may have been something like an equivalent for a one-fifth interest in the farm, encumbered as it was with the life maintenance of the widow. But, assuming that the court may take notice of the fact (which is outside of the case stated) that land has greatly appreciated, while money has greatly declined in value, in the last fifty years, still $100 in money and a few trifling articles of personal property must have appeared even then wholly incommensurate with such a fee simple in a Washington county farm. To my mind it seems much more probable that the $100 and "outfit" were intended to be in lieu of the daughter's life interest merely. And this view is strengthened by the fact that, in case the daughter should die before receiving all the instalments of the money, the unpaid portion was "to revert to the survivors jointly," etc.; the testator's idea being, apparently, that what she had received up to the date of her decease would in that case be the exact measure of her life interest; and hence, he directed the unpaid portion to fall into the general fund.

It was argued that the court should give some weight to the last will and testament of James and those of his sisters, as evidence of the family understanding as to the meaning of the will; and as a sort of contemporaneous exposition, to the effect that it was intended to give a life estate in the farm to each of the children

remaining in "the family;" and the fee simple in remainder to "the latest survivor" of those so remaining; and that the intention, further, was that any daughter who should withdraw from "the family" should thereby forfeit all interest in the estate and, in lieu thereof, should receive $100 in money, besides a bed and bedding, a bureau, and a saddle. The court would be greatly relieved if we could accept this simple solution of the perplexing questions to be decided. But, evidently, we cannot do so. The wills referred to express merely the legal opinion of those whose interests are all now centered in the defendant. It does not appear in the case stated that Mrs. Bell ever acquiesced in that opinion, and, even if it had so appeared, and even if the plaintiffs and their counsel had indorsed that opinion, still it could not properly have any weight with, and ought not to be considered by, the court. This will, like all others, must be interpreted *ex visceribus suis,* without reference to the opinions of those interested in its provisions.

Without unnecessarily prolonging the discussion I may say that I have come, though with doubt and hesitancy, to the following conclusions:

1. That the testator devised to each of his children an undivided fifth interest in the farm in question for life.

2. That Mrs. Bell, by withdrawing from "the family," forfeited her life estate, receiving in lieu thereof, as the will directs, $100 in money, and a bed and bedding, bureau, and saddle.

3. That such expressions in the will as "jointly," and "joint or common property," as also the words "survivor" and "survivors," have reference only to those of the testator's children who should comply with his wishes by remaining on the farm "in a family capacity," and not to Mrs. Bell, who withdrew from "the family," in 1833, and removed to Ohio. Consequently, after such withdrawal she had no possession of, or interest in, the farm or personal estate, jointly or in common with her brother and sisters; nor could she claim the land in fee, after their death, by virtue of her being "the latest survivor."

4. That, on the death of Anna Fulton, 1880, all the life interests were gone, either by death or forfeiture, and the fee simple in remainder, not having been devised by the will, descended under the intestate laws to the heirs of the testator.

I say that my conclusion is, there is no devise of the fee. No doubt the testator intended to dispose of all his estate, for in the second clause of the will he expresses that intention clearly; and the only question is whether he has carried it into effect. It is evident that John Fulton thought he had succeeded in so doing. But in the cloud of inapt words and phrases, the exact meaning of which, as he uses them, it is impossible to determine, I think he has failed to accomplish his purpose.

Now, although the authorities are all agreed that a will should be so construed, if possible, as to avoid a partial intestacy, yet it is equally well settled, not only that the court cannot make a will for a testator where he has made none himself, but that the will must show with "certainty to a common intent," that the testator has disposed of his whole estate. Duffield v. Morris, 8 Watts & S. 348. If this cannot be done,—if the language of the will be so loose, ambiguous, and unskilful, as not to amount to a clear disposition of a portion of his property,—then it must be pronounced that, as to that portion, the testator died intestate. In the present case I cannot say that the testator has devised any more than a series of life interests in the land. There is no kind of certainty that he has done anything more. In his anxiety to carry out his cherished plan of keeping his widow and children together, as a family, until death had removed its last survivor, he seems to have overlooked everything beyond that event, and entirely failed to make any disposition of the fee after the extinction of the last life estate.

The result of these views is that the plaintiffs, as the heirs at law of Mrs. Bell, are entitled to recover the undivided one fourth of the land in controversy.

Both parties brought error to review the judgment entered pursuant to this opinion. The cases were heard together.

*H. J. Vankirk* and *J. W. Morrison* for plaintiffs Bell and others.

*A. W. & M. C. Acheson* for defendant, David M. Fulton.

PER CURIAM:

Each party to this judgment has brought it before us for review. Both cases were argued together. A careful examination of the record convinces us that the learned judge arrived at a correct conclusion; therefore,

Judgment affirmed in each case.