Sterrett's Estate.

Argued March 19, 1930.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Henry G. Wasson, Jr.,* with him *Henry G. Wasson,* for appellant.—The wording of the power is plain, un-

ambiguous and in no sense involved. The words "my said daughters" are repeatedly used in the will and codicils and always, with reference to testator's three daughters, Laura M., Annie B. and Emma J., without distinction among them. The expression "a majority of my said daughters or the survivor of them" means, in relation to the context, two of his three daughters or the survivor of his three daughters. Whether the language of the power be read alone or in connection with other provisions of the will and codicils, the manifest intention of testator deducible therefrom was to confer the power of appointment on any two of his daughters as a majority or on any one of his daughters as the survivor of the three and this intention is clearly expressed and not open to doubt.

In such a case extrinsic evidence to assist in the interpretation is not only unnecessary but inadmissible: Torchiana's Est., 292 Pa. 470.

*Arthur M. Scully,* of *Burgwin, Scully & Burgwin,* with him *Richard W. Williamson, Alvord B. Churchill* and *Biddle, Paul, Dawson & Yocum,* for appellees.—The court below finds that testator intended to give to his daughters Emma and Annie and to the survivor of them power to appoint the residue of the trust estate. In arriving at this intention the learned judge took into consideration the circumstances surrounding testator at the time of making the will and codicils. This is in accordance with well settled principles: Frisbie's Est., 266 Pa. 574, 578; Stambaugh's Est., 135 Pa. 585; Glasgow's Est., 243 Pa. 613.

Testator intended a joint appointment to be revocable and that the power should survive: Cawley's Est., 136 Pa. 628; Rhodes's Est., 277 Pa. 450.

Had testator intended the appointment of the majority of his daughters to be final and complete, he would have directed the majority to exercise it by deed and not by will.

Testator intended the power to survive because he coupled it with an interest: Lloyd's Lessee v. Taylor, 2 Dall. 223; O'Rourke v. Sherwin, 156 Pa. 285.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 14, 1930:

The will of James P. Sterrett, who died in 1901, placed the residue of his estate in trust, "to pay the net annual income" to his daughters Laura M., Annie B. and Emma J. Sterrett, "the survivors and survivor of them, for and during their natural lives, in such amounts and proportions as [the trustee] may deem needful," and provided for a power of appointment by "the majority of my said daughters or the survivor of them." The Girard Trust Company, trustee under the will of James P. Sterrett, deceased, petitioned the Orphans' Court of Allegheny County for a declaratory judgment as to whether a will signed jointly by Annie B. and Emma J. Sterrett, as a "majority," or another will, signed by Annie alone, after the death of her sister Emma, and expressly revoking the previously executed joint will, "shall be held to be the effective exercise of the power of appointment" contained in the will of their father. The court below entered a judgment declaring the will executed by Annie B. Sterrett alone to be "the effective exercise of the power of appointment," and directed the trust company to file an account as trustee. This judgment is appealed from by the Allegheny General Hospital, a beneficiary named in the joint will.

It is apparent from the language, taken as a whole, of the will and codicils of the original testator, that, when he placed the residue of the estate in trust, "to pay the net annual income" to his three daughters, "the survivors and survivor of them, for and during their natural lives, in such amounts and proportions as [the trustee] may deem needful," James P. Sterrett intended a gift of such income to his three daughters, share and share alike, with a right in the trustee to change the propor-

tions, in making payments, from time to time, when deemed "needful." For instance, in the second item of the first codicil, the testator provides that, if any of his three daughters could not be properly supported by "her share of the income," the trustee might make up the deficiency, from time to time, out of the "shares of her sisters." A similar provision (to apply in the event of the "protracted illness" of a daughter), also with words showing that the income was to be the property of the daughters of decedent, is contained in item two of the second codicil to the will, all of which shows that the net income belonged to the daughters and the survivors of them. Such being the case, the averment in the petition for a declaratory judgment that the income from the estate of decedent was in excess of the expenditure necessary to maintain his daughter Laura (the only one of the three daughters now alive) and therefore the trustee found itself in possession of a balance of income which would accumulate in its hands "contrary to the statutes against the accumulations of income," is incorrect so far as the conclusion as to invalidity is concerned, because this income is the property of Laura M. Sterrett (Everhart's Est., 296 Pa. 94) and would in no sense be an unlawful accumulation. If found expedient or necessary, the trustee may spend all of the alleged accumulations for Laura's benefit during her life, and, on her death, any balance remaining will go either to Laura's heirs or as directed by her will. We say, "as directed by her will," because, so long as she lives, it cannot be taken as a basic fact that Laura will not leave a valid will, as appellant assumes.

It is true that Laura M. Sterrett has been living in a hospital for mental and nervous diseases for the past thirty years and was judicially found to be a lunatic in 1906, also that a guardian was appointed for her; but an adjudication of insanity is not conclusive of testamentary incapacity: Hoopes's Est., 174 Pa. 373, 379 et seq. See also 7 A. L. R. 602, section h, and Smoot's Law

of Insanity, page 390, section 461, where it is said: "That a person has been adjudged incompetent from a mental derangement......is not necessarily conclusive of his competency to make a will, [and] it is generally held that the fact that a person making a will is under guardianship will not be conclusive of his testamentary incapacity. ...... The will might have been made during a lucid interval, even where the insanity entirely clouds the mind for the time [citing Titlow v. Titlow, 54 Pa. 216, 224]. This is true even where the testator is confined in an asylum, where the insanity is not [specifically] shown to have affected his testamentary capacity." See Draper's Est., 215 Pa. 314, also cited by Smoot.

The statements in the petition for a declaratory judgment to the effect that Laura has been mentally incompetent for many years, without "lucid intervals," that she has not made a will, being unable to do so, that she is 78 years of age, and that "after all these years...... and at her present age......she never will have any ......lucid intervals or......be competent to exercise the power of appointment in her father's will," cannot be taken as establishing anything so far as Laura's possible future capacity to make a will is concerned. In the first place, though two answers admitting the averments of the petition appear, yet many other persons with a possible interest have not filed answers, and hence have made no admissions of fact. In the next place, the above recited conclusions in the petition do not properly flow from the premises averred; in other words, the bare facts that one has been weakened in intellect, without a lucid interval for "thirty years," and is 78 years of age, do not in law warrant the conclusion that such a person will never have a lucid interval; nor in a case like the present, does the fact that a person is 78 years of age warrant the conclusion in law that she will have no child born to her. In deciding as to the devolution of estates, the rule is that "the possibility of bearing

children exists, even when a woman has [long] passed the age to which the ability to do so usually continues": Westhafer v. Koons, 144 Pa. 26, 32. As said in List v. Rodney, 83 Pa. 483, 492, this possibility of bearing children is a presumption of law which stands albeit the underlying facts seemingly destroy the presumption. On the record now before us, in the eyes of the law, decedent's daughter Laura, despite her impaired mental state and advanced age, may yet bear children and make a valid will. This being so, the present case is not ripe for a declaratory judgment such as rendered by the court below, and the petition for that character of relief should have been refused.

In Kariher's Petition (No. 1), 284 Pa. 455, 472, we said that, "in a declaratory judgment proceeding the court will not decide future rights in anticipation of an event which may not happen, but......will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision ......; and even then such rights will not be determined unless all parties concerned in their adjudication are present and ready to proceed with the case." Here the future rights of those claiming under either one of the two wills (mentioned earlier in this opinion) made by the daughters of decedent, rest entirely on anticipation of events which may not happen, namely, the death of Laura without issue and without a valid exercise of the power of appointment contained in her father's will. Furthermore, should Laura die leaving either issue or a will exercising the power of appointment, her children or the persons named in her testament will have an interest entitling them to be heard on the very points urged for decision in the present declaratory judgment proceedings. Finally, the record before us does not show either an "actual controversy" or the "ripening seeds" of one (see Pittsburgh's Consolidated City Charter, 297 Pa. 502, 506, where we explain that the first of the above quoted expressions means an immediate controversy,

and the second, one which is "inevitable" and "imminent"), "between parties, all of whom are......before the court" (Lyman v. Lyman, 293 Pa. 490, 495-6) ; it shows no controversy whatever, only a desire by the petitioner to be instructed on the law, and this state of affairs does not permit of a declaratory judgment: Pittsburgh's Consolidated City Charter, supra, 506, 507.

Moreover, from the Kariher Case down to our latest utterances on the subject of declaratory judgments, in Taylor v. Haverford Twp., 299 Pa. 402, this court has uniformly ruled that relief may not be granted under the Act of June 18, 1923, P. L. 840, where another established remedy is available. So far as present distribution of the income is concerned, all questions relating to it can be decided on the·adjudication of the trustee's account; and, as a matter of fact, it appears, as we were correctly informed at argument, that when the account ordered to be filed by the decree here appealed from came before the court below, that tribunal awarded the balance of income on hand, not to any of the appointees named in the before mentioned wills of the two deceased children of the original testator, but to the executor of the estate of the last deceased daughter, according to that child's interest therein, and to the committee of Laura, according to her interest, the corpus being awarded to the trustee under the will of the original testator. These awards in themselves show that for immediate purposes no declaratory judgment was needed. On the death of Laura (now the last surviving daughter of the original testator), a final account will of course be filed, when all questions concerning the distribution of corpus and accrued income, the solution of which is sought in the present declaratory judgment proceeding, will be ripe for determination.

As recently said by us in Taylor v. Haverford Twp., supra, "We are determined that the Declaratory Judgments Act, an excellent piece of legislation when kept

within proper bounds, shall not be used in cases to which it is not properly applicable," and this is one of them.

The record is remitted to the court below with directions to dismiss the petition, costs to be paid out of the estate.