## Baldesberger, Appellant, v. Baldesberger.

Argued April 1, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*John E. Evans, Sr.,* with him *H. Y. Crossland* and *Evans, Ivory & Evans,* for appellant.

*John A. Metz, Jr.,* with him *John L. Garrow* and *Metz & Metz,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 2, 1954:

Plaintiff, Walter P. Baldesberger, claims that by virtue of the will of his deceased father he is the owner in fee simple of a certain portion of a farm property which his father had owned, but plaintiff's sister, Carrie Baldesberger, one of the defendants, claims that that will gave her a life estate in the property.

The father, Michael Baldesberger, died in 1915 leaving to survive him his widow and eleven children. By his will, written in 1909, he bequeathed and devised to his wife, for her life, all of his personal property and the use of all of his real estate. He owned a farm situate in Upper St. Clair Township, Allegheny County, containing 53 acres, 37 of which lay on the northwest side of a public highway and contained no buildings or improvements and the remaining 16 acres lay on the southeast side of the highway and contained the farmhouse, barn, and other outbuildings. He devised the 37 acre portion of the property, after the death of his wife, to all his children to be equally divided between them. There is no present controversy in regard to *that* devise.

Michael Baldesberger's will then proceeded as follows: "FIFTH: At the death of my wife, I direct the residue of my farm, with the buildings thereon, together with all farm implements, stock, and furniture, lying southeast of said public road and containing sixteen acres, more or less, to be kept as a home for such of my children as may remain single, and upon the death of said children remaining unmarried, or upon the marriage of all of my said children for whom said house is kept, I devise and bequeath said portion of my farm to my youngest son, Walter Baldesberger, in fee simple, and in case of his death before the death or marriage of such of my children remaining single and for whom said home is provided, I devise said portion of my farm to the youngest of my children liv-

ing at the death or marriage of the surviving child for whom said home is provided in this my will."

Following his father's death the plaintiff, upon returning from Army service and at the request of his mother and brothers and sisters, operated the farm until the mother died in 1936. At that time, of the eleven children one had died and all the others had married except plaintiff and his sister Carrie; Walter married in 1939. Carrie, who is a school teacher, had left the family home on the farm in 1925 and had then purchased a lot in Carrick (now a part of the City of Pittsburgh) and built thereon a house for herself in which she has lived continuously to the present time. She registered there for the purpose of voting, voted in the elections held in that municipality and never in the township where the farm was located, and never went back to the farm except for occasional visits over week-ends and during vacation periods. Walter has continued to live upon and operate the farm.

The present declaratory judgment proceeding was instituted in 1944 to determine the respective rights of the plaintiff and his sisters and brother named as defendants.[1] We note that the pleadings of both parties were all filed by the beginning of the following year, but for some unexplained reason nothing further was done for a period of eight years when a praecipe was filed for a jury trial. The question submitted to the jury was whether Carrie Baldesberger had abandoned or forfeited her interest in the fifth paragraph of her father's will. The verdict of the jury was that she *had* abandoned her rights therein. The court, however, thereupon held that by that paragraph she was

---

[1] The defendants other than Carrie claimed that one of them might eventually become the owner of the property if Walter did not survive Carrie's death or marriage. Carrie will hereinafter be referred to as the defendant.

devised a life estate which she could not lose by abandonment, and therefore the court entered judgment for defendants. Exceptions to this action of the court having been dismissed by the court en banc, plaintiff appeals.

Defendant's contention is that her father's will gave her an unconditional life estate, and, if that were so, plaintiff admits that such an estate could not be lost or forfeited by abandonment. It is plaintiff's position, however, that defendant obtained under the will merely an incorporeal right or privilege to use the property for her home, and, if that were so, defendant admits that such a right *could* be abandoned. The controlling question in the case, therefore, is the nature and extent of the interest which defendant acquired by the fifth paragraph of her father's will.

It is our opinion that that interest was not a life estate but merely an incorporeal right or privilege. The testator's will is couched in technical legal language. It devised his real estate to his wife for life and devised the portion of the farm in question, after the death of his wife, to plaintiff in fee simple. As far as the other children were concerned, there is no such language employed, but merely a direction that that portion of his farm and the buildings thereon, with the farm implements, stock and furniture, was "to be kept as a home" for those children who might remain single and he speaks later of the children "for whom said home is provided." This is not the case, therefore, of a devise of an estate in property followed by an explanation of the testator's purpose in making the devise; obviously such an explanation would not have the effect of limiting the devise itself. Here, on the contrary, there is merely a provision that the property "be kept as a home,"—the grant of a privilege to occupy the property as a home, nothing more. It was

clearly the testator's intention that plaintiff should succeed to the complete ownership of this portion of the farm in subordination only to one other intention, namely, that the property was to be available to any or all of testator's unmarried children so long, but only so long, as they might desire to make it their home. Certainly he did not intend that the farmhouse might remain vacant, possibly for the life span of a child of 50, 60 or 70 years during which time none of the children, even though unmarried, resided or wished to reside there. It is also to be borne in mind, and the testator must be presumed to have known, that a life estate may be conveyed to a stranger, and that it is subject to encumbrance and sale on execution to a stranger; indeed the defendant apparently recognizes that if she does have a life estate she can lease the property to some other person, because she has in fact brought a suit to recover rent from the plaintiff who occupies the farm. Defendant actually contends that she is not obliged to use the property for a home at any time whatever during her life and that the will did not provide that an unmarried child would forfeit his or her interest if he or she permanently abandoned the property or chose never to live there in the first place, but it is inconceivable that the testator intended to give her, or any of his children who remained single, a freehold estate which could defeat (and, if defendant's position is sustained, would in the present case defeat) his express purpose in providing that the property should be kept as a home, that being clearly his only reason for deferring plaintiff's accession to the ownership.

It would scarcely be helpful to analyze in detail cases in the books which involved a question similar to that here presented since the decisions in all of them naturally depended on their own peculiar facts.

Briefly, however, it may be noted that in *Chappel v. Row,* 9 Pa. 72, where there was a grant in fee but a reservation to the grantor's father and mother during their lives of the possession of the land "as a home or residence for them," it was held that the father and mother had no estate which they could assign to a stranger but only a right to occupy the land as a home. The court said that "It was clearly the intention of the parties to the deed, to provide a comfortable home for their aged parents during their joint lives, provided they made the property a permanent home or residence." In *Calhoun v. Jester,* 11 Pa. 474, where there was a devise of a plantation but with a provision that the testator's son, John, should have the privilege of living on the place during his life, it was held that this gave John, not an estate, but a license. The court said that "Had he taken an estate, it would have been liable to judgment and execution by his creditors—the very thing, perhaps, which the testator designed to prevent." In *Kearns v. Kearns,* 107 Pa. 575, where there was a devise to the testator's wife of any part of his dwelling house which she might desire to occupy during her life, for her use and the use of their two daughters so long as they remained unmarried, it was held that the daughters had merely a right of occupancy which ceased with their mother's death. The court said that "The evident intention of the devise was that the daughters who remained single should make it their home with their mother during the continuance of her estate. The estate was not given directly to the daughters. It was given to the mother." In *Shipley's Estate,* 45 Pa. Superior Ct. 570, where there was a direction by the testator that his sister should have the right to retain the use of a house as a family residence as long as she might wish to do so, it was held that the sister took merely a personal license or privilege to occupy the

house and not a life estate. The court said that "It is . . . clear that there was no intention to incumber the right or privilege thus conferred upon her with any of the incidental obligations that would attach to or flow from the creation of a life estate in her favor." In *Sinnott's Estate,* 53 Pa. Superior Ct. 383, a similar provision for the testator's wife was held to give her merely a personal privilege to occupy the residence and not a life estate therein.

The cases relied upon by defendant are all distinguishable. In *Wusthoff v. Dracourt,* 3 Watts 240, there was a devise of a house with a reservation of two of the rooms for the use of the devisee's mother *during her life;* the testator stated that his desire in reserving the rooms for her was that she should be sure of a shelter or home during the time she might have to live. It was held that she received a life estate and not a mere personal privilege. However it is clear that there the mother was expressly given an unconditional life interest in the property and the testator merely made an explanatory statement as to his purpose in making the gift, namely, that she should be sure of a home. In *Wilson v. McKeehan,* 53 Pa. 79, there was a devise to the testator's wife and children of all the proceeds of his farm during her life, she to have the privilege of living with the family in the dwelling house as long as she lived. It was properly held that the grant of the proceeds of the farm was a devise of the property itself and therefore conferred a life estate; the privilege of living with the family was merely a superfluous additional grant. In *Bell v. Fulton,* 1 Sadler 200, there was a devise of the testator's farm and furniture for the use of his family, "to be joint or common property," the profits therefrom to be considered as the property of the family jointly or of so many of them as might remain in a family ca-

pacity; there was an express provision that if any of the testator's daughters withdrew from the family other provision was to be made for her. It was held that of the "joint or common property" each child received an undivided interest in the farm for life. Here there was a clear devise of the property to the children, their interests to terminate on their withdrawal from the family. In *McCalla's Estate*, 16 Pa. Superior Ct. 202, the testatrix left her property for a home to a wife and husband during their lives. It was held that they were not obliged to occupy the property as a home. Here life estates were clearly given by express grant; the words "for a home" were merely, as the court said, the expression by testatrix of the purpose "for which she recommended and desired the property to be used, or explanatory of her bounty." In *Cheroka v. Tobolski*, 151 Pa. Superior Ct. 238, 30 A. 2d 152, there was a conveyance of property subject to a reservation by the grantor of "a certain estate . . . for and during the term of her natural life." This was so clearly and expressly the reservation of a life estate that, as the court said, no other interpretation of the language was possible.

We are, then, clearly of opinion that in the present case the interest given to the unmarried children in the testator's will was merely that of a privilege to occupy the property as a home and not the devise of a life estate; therefore it was a right or privilege which could be abandoned, and the jury's verdict established that it was in fact abandoned by the defendant. And since, as thus decided, her interest in the property ceased upon her abandonment of it as a home, such abandonment had the same effect under the testator's will as if she had married or died, and, since all the other surviving children are married, it follows, from well settled applicable rules, that the devise of the re-

mainder to the plaintiff was accelerated, that he is the present owner in fee simple of the property in question, and that there is no other valid outstanding title: *Fletcher v. Hoblitzell,* 209 Pa. 337, 344, 58 A. 672, 674; *Wyllmer's Estate,* 65 Pa. Superior Ct. 396.

The judgment of the court below is reversed. It is declared that none of the defendants has any right, title or interest in the premises in controversy. It is further declared that plaintiff is the present owner in fee simple of the premises, and judgment is here entered in his favor.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent (a) because a declaratory judgment is not the appropriate remedy under the decisions of this Court, and (b) because the devise to Walter was made solely upon a clearly expressed contingency which has never yet happened. I shall discuss these in their inverse order.

1. *Testator's intention governs.*

If there is any principle clearly settled in the law of Wills it is that the testator's intention governs, and that intention or "meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words: Conner's Estate, 346 Pa. 271, 29 A. 2d 514; Ludwick's Estate, 269 Pa. 365, 112 A. 543": *Britt Estate,* 369 Pa. 450, 454, 455, 87 A. 2d 243.

The majority, in order to reach its conclusion, has to first ignore the language of and then rewrite the testator's will. This is *not* a case where testator devised the residue of his farm (with the buildings thereon, together with all farm implements, stock and furni-

ture) to Walter, and then provided that his single children may live there until their death or marriage; this is *not* a case of a devise to Walter if testator's single children abandon the farm for a few years or forever; this is *not* a case of a devise to Walter and no gift over; this is *not even* a case of a life estate to single children or a personal privilege to single children to occupy the farm as a home, with a gift thereafter to Walter. This *is* a case where a will clearly and specifically directed the residue of the farm (a) "to be kept as a home for such of my children as may remain single"; and then (b) *upon the death or marriage of such single children,* a devise to Walter (testator's youngest son), if he is then living; and (c) if he is not then living (i.e., "in case of his death before the death or marriage of such of my children remaining single . . .") a devise to "the youngest of my children living at the death or marriage of the surviving child for whom said home is provided in this, my will."

Walter's claim is opposed by his sister, Carrie, who claims a life estate, and by his sisters, Teresa Low and Mary Westgerdes, who assert that they, as testator's youngest surviving children, have a contingent interest in remainder.

Put in simple language, this is not a devise to Walter in fee simple, subject to a life estate or even to a personal privilege in testator's single children to occupy the farm as a home; it is a devise to Walter only if he is living at the death or marriage of the last of testator's children who remain single; and if at that time Walter is not living, testator devised the farm to his youngest then living child. Has the latter no rights at all; has the testator no right to give his farm to Walter and, alternatively, to his youngest living child upon such terms or conditions or contingencies as he desires?

The majority opinion has ignored the rights and remainder interest of testator's youngest child (living at the death or marriage of his last single child) and has given to Walter what the testator did not give him, namely, a fee simple estate upon the happening of an event which is different from the event upon the happening of which testator gave the farm to Walter. A gift to Walter upon a contingency different from that which was specified by the testator clearly flies in the teeth of the language of testator's will and defeats testator's clearly expressed intention.

The language of testator's will, considered in its entirety, clearly gives an interest or estate in the farm to his single children for life or until marriage; and upon their death or marriage, testator gave the farm to Walter if he was then living, and if he was then dead, to testator's youngest living child. The majority opinion admits that if Carrie was given a life estate or an estate until her marriage, as Carrie and her two youngest sisters claim—and as the testator himself provided—"such an estate could not be lost or forfeited by abandonment." How can one find only a personal privilege in the single children when each alternative gift over is conditioned not upon the termination or abandonment of that privilege, but solely upon the death or marriage of his single children?

2. *Declaratory judgment.*

Irrespective of the merits, to allow a declaratory judgment proceeding to construe a will, under the facts in this case, is contrary to our authorities and in my opinion is a grievous mistake. *Lifter Estate,* 377 Pa. 227, 103 A. 2d 670; *Eureka Casualty Co. v. Henderson,* 371 Pa. 587, 591, 92 A. 2d 551; *Sterrett's Estate,* 300 Pa. 116, 123, 124, 150 A. 159. Such a precedent, unless or until repudiated, will forever haunt us.

Walter had been living on and working the farm undisturbed and unmolested for 18 years; no one questioned his possession or his rights or his interest; there were no antagonistic claims and there was no litigation which was threatened or imminent and inevitable. Moreover, if Walter survives his sister, Carrie, the contingency provided for by testator will have happened and Walter will unquestionably become vested with a fee simple title without any controversy or litigation whatever.

In *Sterrett's Estate*, 300 Pa., supra, the Court dismissed a declaratory judgment petition which sought the interpretation of two wills which were either supplementary or conflicting. Speaking through Mr. Chief Justice MOSCHZISKER the Court said (pages 123-124, 125) : "In Kariher's Petition (No. 1), 284 Pa. 455, 472, we said that, 'in a declaratory judgment proceeding *the court will not decide future rights in anticipation of an event which may not happen,** but . . . will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision . . . ; . . . .' Here the future rights of those claiming under either one of the two wills . . . made by the daughters of decedent, rest entirely on anticipation of events which may not happen, namely, the death of Laura without issue and without a valid exercise of the power of appointment contained in her father's will. . . . Moreover, from the *Kariher Case* down to our latest utterances on the subject of declaratory judgments, in Taylor v. Haverford Twp., 299 Pa. 402, this court has uniformly ruled that *relief may not be granted* under the Act of June 18, 1923, P. L. 840, *where another established remedy is available. . . .* As recently said by us in Taylor v. Haverford Twp., supra, 'We

---

* Italics throughout, ours.

are determined that the Declaratory Judgments Act, an excellent piece of legislation when kept within proper bounds, shall not be used in cases to which it is not properly applicable,' and this is one of them."

The guiding principles and limitations for declaratory judgments were clearly expressed in *Lifter Estate,* 377 Pa., supra, from which we quote: "In Eureka Casualty Co. v. Henderson, 371 Pa. 587, 92 A. 2d 551, Mr. Chief Justice STERN said (pages 591, 592) : '. . . whether or not a court will take jurisdiction of a petition for a declaratory judgment or decree is purely a matter of judicial discretion. . . . It was said in Capital Bank and Trust Company's Petition, 336 Pa. 108, 111, 6 A. 2d 790, 792; ". . . the vital factor in the assumption of jurisdiction is *the presence of antagonistic claims indicating imminent and inevitable litigation,* coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy: . . ." '

"The facts in the instant case bring it within the aforesaid requirements; the problems involved are so unusual and difficult, *litigation was so imminent and inevitable, and the peril to the Federation was so great and immediate* that we consider this to be an appropriate matter for a declaratory judgment."

There are a number of adequate remedies available to plaintiff other than a declaratory judgment proceeding if an actual controversy as to his rights should arise. If we allow a declaratory judgment proceeding in this case it will virtually supersede and exclude the ordinary proceedings in the Orphans' Court to determine the validity or construction of a will; and in those cases where a life estate or prior estate has not terminated, it will conflict with all our cases which have unqualifiedly held that rights in remainder cannot be adjudicated until they actually arise. It will

also become the general, if not the exclusive, remedy (1) whenever the interpretation of a deed, or a written contract, or an insurance policy is involved; and (2) in cases where ejectment, or a bill quia timet, or a bill for specific performance, or assumpsit for purchase money, or an action under Pa. R. C. P. 1061 would lie; and likewise (3) whenever a person's rights or status or other legal relations are affected by a statute or by a municipal ordinance, or involve a franchise. It will inevitably supplant all of these actions. Such a broad construction of the Act of June 18, 1923, P. L. 840, §2, is unnecessary, unwise and contrary to our cases and the principles heretofore established by this Court.

Assuming jurisdiction in this case and in similar cases cannot help but make bad law—irrespective of what theorists may think—because it is inevitable that in many cases all of the parties having a real or possible interest will not be before the Court, or *all the facts* which may exist at the time the actual controversy ripens may not be known, or may not be alleged at the time the petition for a declaratory judgment is presented.

Furthermore, if a petition for a declaratory judgment will lie in this case, obviously we will have to decide in the near future 50 to 500 important and pressing questions arising out of Philadelphia's City Charter which will involve actual controversies with litigation imminent and inevitable, and which will have far, far greater public importance than the question involved in this case. How can the majority of this Court reconcile this decision with their recent decision in the Philadelphia City Charter case of *Clark v. Meade,* 377 Pa. 150, 104 A. 2d 465, where they refused, over my vigorous objection, to consider and decide the questions of tremendous public importance which were specifi-

cally raised in the petition for a declaratory judgment in that case!

For these reasons I would hold that a declaratory judgment is not a proper or appropriate remedy and the petition for the same should be dismissed; but if it were appropriate, I would affirm the judgment of the lower Court and hold that the devise to Walter was contingent upon his living at the death or marriage of testator's surviving single child, and said contingency has not yet happened.

Mr. Justice MUSMANNO joins in this dissenting opinion.