J-S08039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TESTAMENTARY TRUST | : | IN THE SUPERIOR COURT OF |
| ESTABLISHED BY THE LAST WILL | : | PENNSYLVANIA |
| AND TESTAMENT OF LUCY B. | : | |
| NORTHCRAFT, LATE OF MANN | : | |
| TOWNSHIP, BEDFORD COUNTY, | : | |
| PENNSYLVANIA, DECEASED | : | |
| | : | |
| | : | |
| APPEAL OF: DARRELL NORTHCRAFT | : | No. 1105 WDA 2016 |

Appeal from the Order Entered June 29, 2016
In the Court of Common Pleas of Bedford County
Orphans' Court at No(s): 2014-00072

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED MARCH 09, 2017**

Appellant, Darrell Northcraft, appeals from the order entered in the Bedford County Court of Common Pleas, Orphans' Court, which terminated the testamentary trust established by the last will and testament of Lucy B. Northcraft ("Decedent"), and distributed the trust property to the third-class beneficiaries, Decedent's great-grandchildren. We affirm.

In its June 29, 2016 opinion, the Orphans' Court set forth the relevant facts of this case as follows:

> The facts of the matter are not in dispute. Decedent[1]…created a non-charitable testamentary trust ("Trust") in her Last Will and Testament. The sole property of the testamentary trust consists of two parcels of land in Southampton and Mann Townships of Bedford

_____

[1] Decedent died on May 7, 1986.

County, Pennsylvania. The Trust granted a life estate[2]
interest to Decedent's oldest child, with said life estate
progressing through each of her other children, prioritized
by their ages. Life estate interests were then extended to
Decedent's grandchildren upon the death of her last child,
again prioritized by age. Upon the death or disclaimer of
Decedent's youngest grandchild, the Trust was to
terminate with all property to be distributed to Decedent's
great-grandchildren. [Appellant] is Decedent's last
remaining child. For several years, the formal terms of the
Trust have not been carried out, including the replacement
of Trustees.

[Appellant] seeks to have the Trust terminated and the
Trust property distributed solely to him as the sole
remaining child of Decedent. Respondents from the
second-class beneficiaries (*i.e.*, grandchildren) and third-
class beneficiaries (*i.e.*, great-grandchildren) consent in
the termination of the Trust, but seek to have the Trust
property distributed to the [great-grandchildren]. …

(Memorandum Opinion, filed June 29, 2016, at 1-2). Specifically, the

relevant language of the Trust provides:

THIRD: I devise all of my real estate to my Trustees,
hereinafter named, IN TRUST, NEVERTHELESS, for the
following uses and purposes:

*     *     *

B. My son, Ernest A. Northcraft, shall have the right
to make his home on the premises, and to occupy the
land, my house, the barn and all other farm buildings
existing on the date of this Will or which I or he may
hereafter erect so long as he shall live, provided, however,
my son, Ernest, shall be solely responsible for all taxes,
maintenance and other expenses involved in maintaining

---

[2] The parties dispute whether the Trust actually created a "life estate"
interest in, or merely a right to reside on, the Trust property. We will
discuss this issue more fully later in this decision.

the property and shall receive all income from any and all sources whatever received in respect to the property. Said income shall be considered the sole property of my son, Ernest, while he resides on the property, and this trust shall have no right or other access to said income and it shall not be considered a distribution from the trust estate to my said son. On the death of my said son or in the event he should choose not to continue to reside on the premises, my next oldest child shall have the right to make his/her home on the premises. This privilege of residing on the premises shall be extended to each of my children in order of priority based on their ages. On the death of the child having and exercising the privilege or in the event any child having the privilege should choose not to make his/her home on the premises, the privilege shall be extended to the next oldest child, and so on, provided any child exercising the privilege shall assume the responsibility for taxes, maintenance and upkeep required of my son, Ernest, and provided, further, any such child making his/her home on the premises shall be entitled to receive all of the income earned in respect to the property in the same manner discussed in subparagraph A above up to but not in excess of the sum of Fifteen Thousand Dollars ($15,000.00). All such income in excess of Fifteen Thousand Dollars ($15,000.00) shall be receivable by the trust and distributed as trust income as hereinabove provided to all of my beneficiaries, including any of my beneficiaries who then may be residing on the property.

* * *

E. On the death of the survivor of my children this trust shall continue under the same terms and conditions for the benefit of my grandchildren including the privileges granted by paragraph B of this Article THIRD above with the privilege therein granted concerning the right to make his/her home on the premises being granted in order to the oldest grandchild then living. When none of my children, my granddaughter, Betty Ann Northcraft, nor any of my grandchildren are then living, this trust shall terminate and the then remaining principal, and accumulated or undistributed income shall be distributed, in equal shares, to the then living children of my

- 3 -

grandchildren, without regard to any distribution made under any other provision of this Article THIRD.

* * *

EIGHTH: I appoint as Trustees of the trust created herein each of my children as shall survive me, they to serve as Co-trustees for so long as they live. Upon the death of any trustee, the remaining Trustees shall elect from among my grandchildren a replacement trustee to succeed to all the rights and privileges of my deceased trustee.

* * *

(Decedent's Last Will and Testament, dated January 22, 1979, at 1-3, 5).

Procedurally, on August 6, 2014, Appellant filed a petition for termination of the Trust, alleging the original purpose of the Trust could no longer be served. Specifically, Appellant claimed the expenses necessary to maintain the property exceeded any potential income produced from the property. Appellant also maintained that he resided elsewhere and did not want to move onto the property and make necessary expenditures where, upon Appellant's death, the right of life occupancy and the benefits of any improvements Appellant made would pass to Decedent's eldest then-living grandchild, whose identity was still unknown. Appellant asked the court to terminate the Trust and to distribute all Trust property solely to him because Decedent's "probable intent" was to distribute her property to her surviving children. As well, Appellant insisted he was entitled to reimbursement for expenses he allegedly paid relating to the preservation of the property and its maintenance and upkeep since the interest in the property passed to him

- 4 -

in 2006. Appellant averred his claim for reimbursement should constitute a lien on the property.

On March 6, 2015, Respondents Michael P. Northcraft (Decedent's grandchild) and Michael E. Northcraft (Decedent's great-grandchild),[3] filed an answer and new matter opposing termination of the Trust. Respondents claimed, *inter alia*, the property could be income producing if used properly. Respondents insisted they offered to assist Appellant with expenses necessary to maintain the property but Appellant refused their offers. Respondents alleged Appellant maintained sole and exclusive control of the property since at least 2006, and excluded all other beneficiaries from the property except for his own children. Respondents asserted the affirmative defense of unclean hands, alleging Appellant breached his duties as trustee by, *inter alia*, failing to select replacement trustees. Appellant filed a reply on May 29, 2015. On September 10, 2015, the court appointed counsel for the remaining third-class beneficiaries. The court held a hearing on the matter on February 17, 2016, at which time the court received argument from all counsel. The court deferred its ruling pending the submission of post-hearing memoranda. In post-hearing memoranda, all parties agreed

---

[3] Michael P. Northcraft died during the pendency of this case. Michael E. Northcraft is the son of Michael P. Northcraft and the executor of his estate. Michael E. Northcraft states on appeal that he made no request to substitute the estate as a party because any interest Michael P. Northcraft had in the Trust property ceased upon his death.

that termination of the Trust was proper. Respondents and the remaining third-class beneficiaries asked the court to distribute the Trust property to the third-class beneficiaries.[4] Appellant sought distribution solely to himself.

On June 29, 2016, the court entered an order terminating the Trust and distributing the Trust property to the third-class beneficiaries, Decedent's great-grandchildren. Appellant timely filed a notice of appeal on July 28, 2016, per Pa.R.A.P. 342(a)(4) (explaining appeal may be taken as of right from order terminating trust). The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on August 18, 2016.

Appellant raises two issues for our review:

> SHOULD THE [ORPHANS'] COURT HAVE CONSIDERED OTHER PROVISIONS OF [DECEDENT'S] WILL IN ASCERTAINING WHAT DISTRIBUTION OF THE TRUST PROPERTY UPON TERMINATION WAS CONSISTENT WITH THE PURPOSES OF THE TRUST?
>
> WHERE A TESTATRIX HAS CREATED A TESTAMENTARY TRUST IN REAL ESTATE AND PROVIDED FOR A SEQUENCE OF LIFE INTERESTS VESTING SUCCESSIVELY IN THE ELDEST SURVIVOR AMONG FIRST A CLASS CONSISTING OF HER CHILDREN, AND SECOND A CLASS CONSISTING OF HER GRANDCHILDREN, WITH REMAINDER IN FEE PER CAPITA TO A THIRD CLASS CONSISTING OF HER THEN LIVING GREAT-GRANDCHILDREN, MAY THE COURT UPON TERMINATION UNDER 20 PA.C.S.A. § 7740.2 BECAUSE OF

---

[4] Respondents and the remaining third-party beneficiaries also opposed Appellant's claim for reimbursement of expenses.

CIRCUMSTANCES THAT APPARENTLY WERE NOT
ANTICIPATED BY THE TESTATRIX, BEFORE THE DEATH OF
ALL MEMBERS OF THE FIRST AND SECOND CLASSES,
AWARD THE TRUST PROPERTY EXCLUSIVELY TO THE
THIRD CLASS, EFFECTIVELY EXTINGUISHING THE LIFE
INTERESTS?

(Appellant's Brief at 3).

Our standard and scope of review are as follows:

Our standard of review of the findings of an [O]rphans'
[C]ourt is deferential.

When reviewing a decree entered by the Orphans'
Court, this Court must determine whether the record
is free from legal error and the court's factual
findings are supported by the evidence. Because the
Orphans' Court sits as the fact-finder, it determines
the credibility of the witnesses and, on review, we
will not reverse its credibility determinations absent
an abuse of that discretion.

However, we are not constrained to give the same
deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678-79
(Pa.Super. 2000), *appeal denied*, 563 Pa. 646, 758 A.2d
1200 (2000) (internal citations and quotation marks
omitted). "[T]he Orphans' [C]ourt decision will not be
reversed unless there has been an abuse of discretion or a
fundamental error in applying the correct principles of
law." *In re Estate of Luongo*, 823 A.2d 942, 951
(Pa.Super. 2003), *appeal denied*, 577 Pa. 722, 847 A.2d
1287 (2003).

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012), *appeal
denied*, 620 Pa. 724, 69 A.3d 603 (2013).

For purposes of disposition, we combine Appellant's issues. Appellant
argues Decedent's will, read in its entirety, sheds the best light on

- 7 -

Decedent's probable intent concerning how to distribute the Trust property. Appellant avers Decedent made numerous provisions throughout her will intending to benefit her "then surviving children." For example, Appellant highlights Article SECOND of the will, in which Appellant bequeathed tangible personalty to her surviving children, as well as the residuary clause of the will at Article SEVENTH, which vests the remainder of Decedent's estate in "such of my children as survive me." Appellant suggests Decedent's purpose in formulating the trust was to benefit only one child at a time in each generation (the eldest survivor), even if that meant excluding any or all younger members of the same generation or all members of the next generation. Appellant insists Decedent designated her children as trustees, vesting them with certain authority Decedent did not similarly grant to later generations. Appellant maintains the court erred by focusing its analysis predominately on the language at Article THIRD of Decedent's will without examining the will in its entirety to ascertain Decedent's probable intent in light of the present circumstances. Given her testamentary plan as a whole, Appellant suggests Decedent would have intended the Trust property to pass to the person with whom she enjoyed the closest relation—her only surviving child.

Even if the court's decision not to award Appellant the Trust property was proper, Appellant argues he is entitled to reimbursement for the value of the life estate he held in the property. Appellant claims the court ignored

Decedent's purpose to provide a benefit to her children (and then grandchildren) during their lifetimes by distributing the Trust property only to the third-party beneficiaries, Decedent's great-grandchildren. Appellant concedes the language of Article THIRD provides for distribution to the great-grandchildren upon termination of the trust, but he suggests this purpose was to occur only after the death of all of Decedent's children and grandchildren. Appellant contends Decedent would not have wanted to bypass her living children and grandchildren upon early termination of the trust. Appellant concludes the Orphans' Court erred by distributing the Trust property solely to Decedent's great-grandchildren, and this Court must reverse and remand for the Orphans' Court to reconsider its decision concerning the Trust property; or, in the alternative, conduct further proceedings regarding the valuation of Appellant's life interest.[5] We disagree.

The Decedents, Estates and Fiduciaries Code ("Code") provides, in pertinent part, as follows:

> **§ 7740.2.    Modification   or   termination   of noncharitable irrevocable trust by court—UTC 412**
>
> **(a)    Unanticipated   circumstances.**—The   court   may modify the administrative or dispositive provisions of a noncharitable irrevocable trust, make an allowance from

---

[5] On appeal, Appellant abandoned his claim for reimbursement of expenses Appellant allegedly paid relating to the preservation of the property and its maintenance and upkeep.

the principal of the trust or terminate the trust if, because of circumstances that apparently were not anticipated by the settlor, modification, allowance or termination will further the purposes of the trust. To the extent practicable, the modification or allowance shall approximate the settlor's probable intention.

**(b) Inability to administer effectively.**—The court may modify the administrative provisions of a noncharitable irrevocable trust if adherence to the existing provisions would be impracticable or wasteful or impair the trust's administration.

**(c) Distribution of property.**—Upon termination of a trust under this section, the trustee shall distribute the trust property in a manner consistent with the purposes of the trust.

20 Pa.C.S.A. § 7740.2.

"A life estate is defined as an estate whose duration is limited to the life of the party holding it, or some other person." *In re Paxson Trust I*, 893 A.2d 99, 115 (Pa.Super. 2006), *appeal denied*, 588 Pa. 759, 903 A.2d 538 (2006) (internal citation and quotation marks omitted).

A life estate arises when a conveyance or will expressly limits the duration of the created estate in terms of the life or lives of one or more persons, or when the will or instrument creating the interest, viewed as a whole, manifests the intent of the transferor to create an estate measured by the life or lives of one or more persons. A life estate has the quality of alienability, thus the life estate can be conveyed to a third person; but, the life estate holder cannot convey a greater interest than he/she possesses. Generally, the life estate holder is responsible for interest on any mortgage on the property, and has a duty to pay current taxes and assessments, by a municipality or other public authority, which do not exceed the probable duration of the life estate.

*Id.* (internal citations omitted). "[T]he use of any particular phrases or

- 10 -

words of art is not required in order to create or reserve a life estate." *Id.* (holding trust deed executed by children's maternal grandfather conveying family home to children's parents as trustees for children granted parents life estate in home; trust deed conveyed property to parents "for their sole and separate use, for [and] during the term of their natural life"; deed stated that upon parents' death, premises shall vest in their children, absolutely and in fee simple; upon termination of trust, parents were entitled to reimbursement for value of their life estates). *Compare Estate of Culig*, 134 A.3d 463 (Pa.Super. 2016) (holding will which granted decedent's wife "right to reside" in his residence without payment of rent until her death, or other certain events occurred, did not grant wife life estate but merely license or privilege to continue to occupy or reside at decedent's residence; Orphans' Court erred by construing nature of wife's interest in real estate as that of life tenant; even though wife was not "life tenant," she was still obligated to make routine repairs and maintenance to property while she enjoyed use of property). *See also Baldesberger v. Baldesberger*, 378 Pa. 113, 105 A.2d 713 (1954) (distinguishing between life estate and right to reside or occupy; decedent's will granted his children right to use their father's farm as home if they remained unmarried; holding interest in question was incorporeal right to reside on property; while decedent gave his wife farm for her life without qualification, decedent gave his children right to use farm as home only if they remained unmarried;

thus, decedent's will granted children privilege to occupy property as their home, nothing more).

Instantly, the Orphans' Court addressed Appellant's issues as follows:

[Appellant] contends that the Trust has become unworkable in that, *inter alia*, no replacement trustees have ever been elected and that [Appellant] has become solely responsible for the maintenance of the property with no desire to exercise the benefits, or continue the responsibilities, of his interest. Both groups of Respondents agree that [Appellant's] inaction and unwillingness to disclaim his interest, have so frustrated the purpose of the Trust that termination is necessary. We concur with the position of all parties. While we note that the consent of all interested parties to terminate a trust does not necessitate such a result, we are left with no other conclusion in this case. Given the longstanding noncompliance with the terms of the Trust, and the current stalemate in which the Trust is now mired, we find that only termination of the [T]rust will ultimately further the original purposes of the Trust.

\* \* \*

Having found that termination of the Trust is necessary, we now turn to the issue of how the Trust property should be distributed. …

[Appellant] argues that the Trust property should be distributed solely to [him] as the sole remaining child of Decedent. In support of this argument, [Appellant] points to what he views as the scheme of distribution in Decedent's Last Will and Testament. [Appellant] claims that there is a clear intent by Decedent to benefit a generation of descendants—regardless of the number of its members—to the exclusion of the next generation of descendants. We are unpersuaded by [Appellant's] argument.

The plain language of Section 7740.2(c) commands that we distribute the property consistent with the purposes of the **Trust**, not what may be perceived as the overall

- 12 -

testamentary scheme of Decedent's Last Will and Testament. And, the clear purpose of the Trust was to provide a life estate to Decedent's children (and then grandchildren) individually in succession, thereby affording a benefit to Decedent's heirs and providing a manner of maintaining the Trust property. Once the life estate successions had run their course through Decedent's children and grandchildren, however, the purpose of the Trust then changes to provide for Decedent's great-grandchildren by distributing the Trust property amongst them upon termination. Therefore, we view the ultimate purpose of the Trust as providing for Decedent's great-grandchildren with the prior generations supporting this purpose by maintaining the Trust property. Accordingly, we are of the opinion that the Trust property should be distributed to the great-grandchildren upon termination.

In support of our decision we note that, under no language of the Trust (nor by any normal operation thereof), was the Trust property ever to be distributed to Decedent's children—nonetheless a sole child. Therefore, Decedent never contemplated, nor intended, the result for which [Appellant] argues. Decedent did, however, intend for the Trust property to ultimately vest amongst her great-grandchildren. While we understand that our decision arrives at Decedent's intended result in a manner that is unintended, we nonetheless find this result to exponentially further the purposes of the Trust [more] than [Appellant's] proposal.

(Memorandum Opinion at 2-4) (internal citations omitted) (emphasis in original). We see no reason to disrupt the court's decision to terminate the Trust and to distribute the Trust property to Decedent's great-grandchildren, consistent with the ultimate purpose of the Trust. *See* 20 Pa.C.S.A. § 7740.2(a), (c); *Estate of Whitley, supra*.

We depart from the Orphans' Court's analysis only to the extent that it characterizes the interest granted to Decedent's children and grandchildren

as "life estates." Decedent granted her children (and then grandchildren) "the right to make [their] home on the premises." (Decedent's Last Will and Testament at 2). Upon the death of each child (prioritized by age) "or in the event [the child] should choose not to continue to reside on the premises," the "right to reside" passed to the next oldest child. Decedent repeatedly referred to the rights granted to each child and grandchild as the "privilege" of residing on the premises. *Id.* Significantly, Decedent did not intend for her children or grandchildren to enjoy certain benefits of the property if they chose not to reside there, such as the ability to collect rent from the property. Likewise, Decedent did not intend to grant children or grandchildren the right to convey the property to a third party. Rather, if the child or grandchild chose not to exercise his/her right to reside on the property, the interest then passed to the next child/grandchild in line. Under these circumstances, Decedent granted each child and grandchild a "right to reside," not a life estate. ***See Baldesberger, supra***; ***Culig, supra***. ***Compare In re Paxson Trust I, supra***. Because Appellant did not have a life estate interest in the Trust property, he is not entitled to reimbursement for the value of his interest in the property. ***See id.*** Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/2017