J-A29020-15

2016 PA Super 67

| | |
|---|---|
| IN RE: ESTATE OF NICHOLAS CULIG, A/K/A NICHOLAS J. CULIG, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: ELEANOR CULIG | No. 1884 WDA 2014 |

Appeal from the Order October 21, 2014
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-99-07638

BEFORE: FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

OPINION BY BOWES, J.:                                    **FILED MARCH 18, 2016**

Eleanor Culig appeals the orphans' court's conclusion that she must pay for ordinary repairs and maintenance on the house where she resides. We conclude that Appellant possesses a right to reside rather than a life estate in the real estate in question and that the orphans' court erred in ruling that she was a life tenant. However, we affirm the orphans' court's ruling that Appellant must pay for routine repairs and maintenance occasioned by her use of that property.

Nicholas Culig died testate on September 17, 1999. On November 8, 1999, the Register of Wills of Allegheny County probated his February 28, 1990 will at this action number and granted letters testamentary to his son,

Robert J. Culig. There were two dispositive provisions in the will. First, decedent set forth:

> I give and devise to my spouse, ELEANOR CULIG, **the right to reside** in my residence at 700 Frank Street, West Mifflin, Allegheny County, Pennsylvania without the payment of rent **until such time as she shall cease to reside there**, until such time as she cohabits with any man not a member of her immediate family within the degrees of consanguinity, until her death, or until her remarriage, whichever shall first occur. However, her right to reside there is conditioned upon her prompt payment of all real estate taxes and insurance premiums attributable to said premises.

Last Will and Testament of Nicholas Culig, 2/2/1990, at 2, ¶ 5 (emphases added). Second, Mr. Culig's residuary estate was devised equally to his children, Robert J. Culig and Patricia A. Miller, who are Appellees herein.

On August 24, 2012, Appellant filed a petition for a declaratory judgment in this estate matter. Appellant had resided at 700 Frank Street since the decedent's death, and she sought a declaration that Robert and Patricia were responsible for past and future repairs and maintenance required at that location. She relied upon the above term in the will and also upon the following language in a May 15, 1989 prenuptial agreement entered by decedent and Appellant:

> In the event that Mr. Culig predeceases [Appellant, Appellant] by virtue of this agreement shall have the right to reside in Mr. Culig's residence at 700 Frank Street, West Mifflin, Pennsylvania, for [as] long as she shall reside there not cohabitating with any man not a member of her immediate family within the degrees of consanguinity or until her death or remarriage, whichever shall first occur, subject to her obligation during such time to pay the cost of real estate taxes and insurance premiums on the premises. **The parties further**

- 2 -

**agree that during their marriage the cost of repairs, maintenance and capital improvements on the Frank Street residence shall be paid by Mr. Culig from his sole and separate assets**.

Petition for Declaratory Judgment, 8/24/12, at ¶ 5; *Id*. at Exhibit A (emphasis added).

Appellant claimed that, under these documents, she was required to satisfy only real estate taxes and insurance on the Frank Street property whereas Appellees were responsible for all repairs and maintenance. In this action, Appellant asked that Appellees be compelled to make the following repairs to the real estate: 1) remediation of mold and damage to the foundation caused by a water problem; 2) replacement of a storm door, front door, broken electrical outlets, outdoor water faucet, and toilet; 3) fix damage to the stairway and living room ceilings; 4) cure both an unsatisfactory repair to walls and baseboards harmed by a termite infestation and unacceptable repairs made to the outside of the house after a car struck it; 5) replace a cracked windowpane; 6) repair or replace leaking gutters; 7) grade the foundation to prevent water from leaking in the basement; 8) caulk the windows; 9) realign uneven patio tiles; 10) fix a deteriorating carport; and 11) repair and paint the deck. Additionally, Appellant claimed that Appellees were liable for damage to her personal property caused by the wind and had to pay to repair her kitchen appliances. Appellees suggest that, in the past, Appellant asked them to pay for snow

removal, replacement filters for the furnace, and lawn maintenance, including mowing the grass.

After Appellees denied that they were responsible for repairs and maintenance under the terms of either the will or the prenuptial agreement, the parties entered a stipulation allocating responsibility for the enumerated repairs that the home already needed. They also agreed to forego an evidentiary hearing and to allow the case to proceed based upon the documents and briefs. Thus, the court was asked to decide who was responsible for any future repairs and maintenance required at 700 Frank Street.

On July 29, 2014, the court entered an order. Appellant, through inadvertence, did not receive a copy of the order and was permitted to file *nunc pro tunc* exceptions, which are optional in orphans' court. In order to clarify its previous ruling, the court issued an amended order on October 21, 2014. That order provided that Appellant was "a life tenant at 700 Frank Street, West Mifflin, Pennsylvania." Order of Court, 10/21/14, at 1. The order continued that Appellant was "responsible for future repairs, improvements, and maintenance arising from her occupancy of the residence," and, concomitantly, Appellees were not "obligated to perform future repairs, improvements, or maintenance which are necessary as a result of [Appellant's] occupancy of the residence." *Id*. The court determined that Appellees were responsible only for "capital improvements

- 4 -

and major repairs which do not arise as a result of [Appellant's] occupancy of the premises." *Id*. This appeal followed entry of the October 21, 2014 order. Appellant raises these contentions on appeal:

> I. Whether the trial court erred as a matter of law in not holding that the Prenuptial and the Will create a license, or a right to occupy, and not a life estate?
>
> II. Whether the trial court erred as a matter of law in not holding that the Prenuptial and the Will do not obligate Eleanor to make "future repairs, improvements, and maintenance arising from her occupancy of the residence"?

Appellant's brief at 4.

Appellant's first position is that the orphans' court erred in concluding that she was a life tenant and that she possesses only a right to reside in the house, which does not obligate her to effectuate repairs. This averment requires that we interpret the terms of the will. "[T]he interpretation of a trust or a will presents a question of law. As such, our standard of review is *de novo,* and our scope of review is plenary. Our analysis therefore is not confined by the decision of the orphans' court." *In re Estate of McFadden*, 100 A.3d 645, 650 (Pa.Super. 2014) (citations omitted).

The legal distinction between a life estate and a right to reside or occupy was examined in *Baldesberger v. Baldesberger*, 105 A.2d 713 (Pa. 1954). Therein, under their father's will, the defendant and her brothers and sisters were given the right to use their father's farm as a home if they remained unmarried. The remainderman under the will was the plaintiff, decedent's son who lived and worked on the farm. The

defendant was unmarried, but had moved to a house and resided there for a significant period. The plaintiff instituted a declaratory judgment proceeding to determine the respective rights of the plaintiff and defendant to the farm.

The matter proceeded to a trial before a jury, which determined that defendant had abandoned or forfeited any interest that she had in the property by moving into her own residence. The trial court reversed the jury's verdict. It concluded that the will accorded the defendant a life estate, which could not be abandoned. After the son successfully obtained review of the orphans' court ruling in our Supreme Court, the defendant maintained that, under her father's will, she had an unconditional life estate that could not be forfeited by abandonment. She conceded, however, that a right to reside or occupy could be relinquished. The plaintiff countered that the will accorded defendant "merely an incorporeal right or privilege to use the property for her home," which the defendant admitted could be abandoned. *Id*. at 714.

Our Supreme Court held that the interest in question was an incorporeal right to reside on the property. It noted that decedent, in his will, had given his wife the farm for her life, without qualification; whereas, the right of the unmarried children was to use the farm as a home. Our High Court concluded that this language was intended to give the unmarried children only a right to reside on the farm. The **Baldesberger** Court relied upon "**Chappel v. Row**, 9 Pa. 72, where there was a grant in fee but a

- 6 -

reservation to the grantor's father and mother during their lives of the possession of the land 'as a home or residence for them,' [and where] it was held that the father and mother had no estate which they could assign to a stranger but only a right to occupy the land as a home." *Id*. at 715. Our Supreme Court ruled in **Baldesberger** that:

> "[T]he interest given to the unmarried children in the testator's will was merely that of a privilege to occupy the property as a home and not the devise of a life estate; therefore it was a right or privilege which could be abandoned, and the jury's verdict established that it was in fact abandoned by the defendant."

*Id*. at 716.

We examined the same issue in **In Re Shipley's Estate**, 45 Pa. Super. 570 (1911), where the Commonwealth sought to collect a value tax on an interest in property held by the decedent's sister. Under the will, the sister was given "the right to retain the use of [the decedent's] house . . . free of rent as a family residence as long as she may live and may wish to do so." *Id*. at 571. If the sister's interest was a life estate, then the Commonwealth could collect its tax, but, if the interest was a right to reside, then it was not taxable. We concluded that the sister had a right to reside, upholding the orphan's court's conclusion that the sister did not have a life estate. We characterized the right in question as "a mere license or personal privilege to continue the occupancy of [decedent's home] rent free after the death of the testator, as she had occupied it during his lifetime." *Id*. at 574.

In the case at bar, the will, in pertinent part, gave Appellant the "right to reside" at 700 Frank Street "until such time as she shall cease to reside there." Under the case law in question, Appellant does not possess a life estate, but a mere license or privilege to continue to occupy or reside at 700 Frank Street. Hence, the orphans' court committed an error of law in construing the nature of Appellant's interest in that real estate as that of a life tenant. We thus agree with Appellant's first contention to the extent the she challenges that aspect of the orphans' court's order.

The cases construing whether a will has given a beneficiary a right to reside rather than life estate, however, do not speak to the crucial question on appeal: whether Appellant or Appellees are responsible for routine maintenance and repairs to 700 Frank Street that arise due to Appellant's use of that real estate. The law is clear that a life tenant does have the obligation to pay for repairs and maintenance to real property subject to his life estate. As noted in the Summary of Pennsylvania jurisprudence, "A life tenant is responsible for the ordinary course of business repairs and maintenance, must pay taxes, municipal assessments for sidewalk paving, and mortgage interest accruing during his or her ownership, and he or she must not commit or permit waste." 6 Summ. Pa. Jur. 2d Property § 5:13 (2d ed.) (footnote omitted; emphasis added). Indeed, the general law throughout the United States imposes upon a life tenant the obligation to make repairs to property necessitated by his use of the real estate and to

satisfy the costs of routine maintenance. *See* Rights and Duties of Life Tenant and Remainderman (Income and *Corpus*) with Respect to Repairs and Improvements, 128 A.L.R. 199 (1940) ("The broad doctrine that it is the duty of a life tenant to keep the property subject to the life estate in repair is so firmly established in American jurisprudence as hardly to require citation of authorities.").

The critical question herein is, even though Appellant's interest in the real estate is a right to reside rather than a life estate, whether Appellant or Appellees are obligated to pay for routine repairs and maintenance to 700 Frank Street occasioned by Appellant's occupancy of that property. Appellant provides us with no legal authority which examines that inquiry. The one decision that does touch on the matter is ***In re Sinnott's Estate***, 53 Pa. Super. 383 (1913).

That case involved the adjudication of a fourth account and decree of distribution of the balance of assets under administration of the executors and trustees under Mr. Sinnot's will. The accountants paid real estate taxes on Mr. Sinnott's residence and wanted to charge those taxes, in the proposed distribution, to Mr. Sinnott's widow from her share of the income from the real estate. She objected to the charge, and her exception was sustained. The orphans' court ruled that the real estate taxes "were chargeable against the general income derived from the real estate and

should be deducted from that fund in order to ascertain the net balance for distribution among the widow and devisees of the income." *Id*. at 384.

The testator's son, who was also a recipient of part of the real estate income, appealed and maintained that the real estate taxes should be paid by the decedent's widow. The issue on appeal was "whether the estate, interest, or privilege in the residence, called Rathalla, which Annie E. Sinnott, the widow, took under the will of the decedent, was of such a nature as to impose upon her the legal duty to pay the annual taxes upon the property." *Id*.

The son argued that the widow had a life estate in Rathalla and was thereby responsible for payment of taxes. We concurred that, if Mrs. Sinnott had a life estate in Rathalla, she was liable for the real estate taxes. We examined the will to determine her interest. In that document, Mrs. Sinnott received absolutely one-third of decedent's personal property and, for her life, one-third of the rents and profits from his real estate. Additionally, the widow was "permitted to occupy rent free" decedent's residence at Rathalla "for the term of her life if she so desire" as long as the wife "should continue after [Mr. Sinnott's] death to occupy Rathalla[.]" *Id*. at 384-85. The will further stated, "Upon my said wife ceasing to reside at or not wishing to occupy said Rathalla, I direct the same shall be sold by my executors." *Id*. at 385. We concluded that this language conferred upon the widow the personal privilege or right to occupy or reside at Rathalla rather than a life

estate in the land. This Court ruled that the widow "was not vested with such an estate in the land as to render her liable for the payment of the taxes," and we affirmed. *Id*. at 387.

*Sinnott's Estate* is materially different from the case herein. Appellant was not given the right to reside at 700 Frank Street "rent free," and, the obligation to pay taxes was specifically imposed upon her. Additionally, the *Sinnott's Estate* decision did not address whether the wife was responsible for routine repairs and maintenance arising during her residence on the real estate. Finally, the real estate taxes were charged against the income from the real estate rather imposed upon the remaindermen. Thus, that case is of scant value herein.

Given the lack of specific case authority on the question, this Court must thus determine whether it is appropriate to place the same burden regarding repairs and maintenance on a person with a right to reside that we have imposed on a life tenant. We conclude that there is no material distinction between the interest enjoyed by a life tenant and that owned by a person who has a right of residency in this respect. In both cases, the person is living on the real estate in question, and the remaindermen have a right to use the property only upon the occurrence of a contingency. In each scenario, the life tenant/possessor of a right to reside was living on the property when the routine repairs and maintenance became necessary. It is

only logical to apply the law regarding ordinary repairs and maintenance imposed on life estates to rights to reside.

Indeed, in the present case, Appellant has been living on the property for sixteen and one-half years since Mr. Culig died, and she seeks to impose liability on Appellees for all routine repairs as well as all maintenance. It is counterintuitive to require a remainderman, with an interest that will only come to fruition in the future, to pay for all the upkeep of a home being occupied by someone who will be the sole beneficiary of the expenses of upkeep and who was residing in the house when the need for the repairs and maintenance arose. Appellant is enjoying the use of the home and should be legally required to satisfy the costs of ordinary maintenance and repairs necessitated by that use.

We now address Appellant's second position on appeal. She claims that, under the will and prenuptial agreement, Appellees were assigned the duty to make ordinary repairs and maintenance. As to the will, Appellant notes that she was required to pay the real estate taxes and insurance. She insists that, since she was not given the obligation to pay for routine repairs and maintenance, Appellees are required to assume that duty. However, Appellant ignores the fact that the will is entirely silent on the matter of ordinary repairs and maintenance. Silence is just that; it imposes an obligation on no one for repair and maintenance. Therefore, we must interpret the will, which undertaking is guided by the following principles.

It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain:"

*In re Estate of McFadden*, 100 A.3d 645, 649-50 (Pa.Super. 2014) (citation and quotation marks omitted). In this case, the will does not speak to the matter. We therefore may consider "extrinsic evidence to glean the testator's intent." *Id*. at 650.

Herein, this Court has the prenuptial agreement to guide us. Therein, the decedent's obligation to make repairs and maintain 700 Frank Street was expressly assumed only during his marriage to Appellant. The agreement thus evidences Mr. Culig's intent to shift that obligation to Appellant after the termination of the marriage, which occurred when Mr. Culig died. Conversely, there is nothing in the will to suggest that it was Mr. Culig's intent to require his children to provide a significant amount of monetary support to Appellant by making them pay for the everyday repair and maintenance expenses occasioned by using 700 Frank Street, which was valued at less than $60,000 in the estate inventory, as her home.

Appellant also suggests that, under the terms of the prenuptial agreement, Appellees must pay for repairs and maintenance on the house while she lives in it. Appellant relies on the precept that an agreement by a

decedent binds his estate. **Estate of Myers**, 544 A.2d 506 (Pa.Super. 1988). This position is seriously misguided for two reasons. First, Appellees are not Mr. Culig's estate, and Appellees were not signatories to the prenuptial agreement. Appellees, as Mr. Culig's children, are not bound by any agreement that he entered into. Second, the prenuptial agreement expressly stated that Mr. Culig was obliged to make repairs and maintain the property **during the marriage**. The marriage has ended.

Accordingly, we reverse the orphans' court's conclusion that Eleanor Culig has a life estate in 700 Frank Street, West Mifflin, Pennsylvania, finding that Appellant has a right to reside only. We affirm the following decisions of the orphans' court: 1) Eleanor Culig is responsible for future repairs, improvements, and maintenance arising from her occupancy of 700 Frank Street, West Mifflin, Pennsylvania; 2) Robert J. Culig and Patricia Miller shall not be obligated to perform future repairs, improvements, or maintenance which are necessary as a result of Eleanor Culig's occupancy of 700 Frank Street, West Mifflin, Pennsylvania; and 3) Robert J. Culig and Patricia Miller are responsible for capital improvements and major repairs that do not arise as a result of Eleanor Culig's occupancy of 700 Frank Street, West Mifflin, Pennsylvania.

Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.

- 14 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2016