J-A11019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TRUST UNDER WILL OF MINNIE F. CASSATT AS APPOINTED BY ALEXANDER J. CASSATT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: WELLS FARGO BANK, N.A. | |
| | No. 1587 EDA 2015 |

Appeal from the Order Entered April 24, 2015
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 1994-X1352

BEFORE: SHOGAN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JULY 21, 2016**

Appellant, Wells Fargo Bank, N.A. (Wells Fargo), appeals from the April 24, 2015 order granting summary judgment in favor of Appellees, Sheila Cassatt Issenberg and Lydia Cassatt Osgood, in their petition for declaratory judgment. This ruling confirmed Appellees' ability, as beneficiaries, to remove Wells Fargo as the corporate trustee of the trust under will of Minnie F. Cassatt (Trust) as appointed by Alexander J. Cassatt and to appoint The Northern Trust Company (Northern Trust) as the successor corporate trustee. Further, the orphan's court *sua sponte* transferred the situs of the trust to Delaware County. After careful review, we reverse.

_____

[*] Former Justice specially assigned to the Superior Court.

The orphan's court summarized the facts and procedural history of this case as follows.

> Minnie Cassatt died May 30, 1954 a resident of Delaware County, Pennsylvania and her will and codicil were admitted to probate by the Register of Wills of Delaware County. The Pennsylvania Company for Banking and Trusts and Minnie Cassatt's two sons, Alexander J. Cassatt and Anthony D. Cassatt, qualified as Executors under her will.
>
> Minnie Cassatt left her residuary estate in separate trusts for the benefit of her two sons, Alexander J. Cassatt and Anthony D. Cassatt. Under ITEM FIFTH (A) of Minnie Cassatt's will, as modified by her codicil, each son was given the power to appoint the income and principal of his trust to and among his issue as he may designate by his will. Under ITEM THIRTEENTH of Minnie Cassatt's will, a majority of the adult beneficiaries who are entitled to receive income from any trust created under her will may, at any time and from time to time, in their discretion, and without assigning any cause therefore, remove the corporate trustee by a written instrument delivered to the corporate trustee.
>
> Alexander J. Cassatt ("Alexander") died April 19, 1985, a resident of Charlestown, South Carolina. Alexander's will dated August 29, 1978 and codicils thereto dated August 29, 1978, May 11, 1984, and March 30, 1985 were admitted to probate by the Probate Court of Charlestown County, South Carolina. Under ITEM FIRST of Alexander's will, he exercised the power of appointment that he had over the separate residuary trust for his benefit under the will of his mother, Minnie Cassatt, directing that, after the payment of certain specific bequests, the balance of the principal of that trust would continue to be held in trust for his grandchildren and their issue, by the surviving trustee under Minnie Cassatt's will, together with the trustees appointed in his will for a period to expire twenty (20) years

following the death of his last surviving child who was living at the time of Minnie Cassatt's death. In his exercise of his power of appointment, Alexander further directed that the continuing trust for the benefit of his grandchildren, shall be "subject to all of the provisions of ITEMS SEVENTH and NINTH [of Alexander's will] and with all the powers thereby conferred." ITEM SEVENTH of Alexander's will contains a spendthrift provision and ITEM NINTH recites the powers granted to the fiduciaries appointed under his will. Alexander did not specifically refer to ITEM THIRTEENTH of Minnie Cassatt's will nor did he refer to the power of beneficiaries under Minnie Cassatt's will to remove and replace a corporate trustee, nor did he expressly provide in his will that the beneficiaries of any trust created or appointed would have the power to remove and replace a corporate trustee.

A majority of the current income beneficiaries of the trust as appointed by Alexander take the position that they have the authority under ITEM THIRTEENTH of Minnie Cassatt's will, to remove and replace the corporate trustee. In April of 2013, a majority of the current income beneficiaries executed a document removing Wells Fargo [] which was then serving as the corporate trustee as a successor in interest to the Pennsylvania Company for Banking and Trusts. A majority of the income beneficiaries then appointed [] Northern Trust [] as a successor corporate co-trustee. Wells Fargo has not recognized its removal and the appointment of [] Northern Trust [] as its successor, asserting that the provisions of ITEMS THIRTEENTH of Minnie Cassatt's will do not apply to the trust as appointed by Alexander.

[Appellees,] [t]wo of the current income beneficiaries of the trust[,] filed a Petition for Declaratory Judgment in the Court of Common Pleas of Delaware County[.] … Wells Fargo filed Preliminary Objections to the Delaware County Petition contending that the Court of Common Pleas of Montgomery County, Pennsylvania had already

- 3 -

exercised jurisdiction over the trust as appointed. [Appellees] then withdrew the Delaware County petition and filed the instant Petition for Declaratory Judgement with [the Montgomery County] Orphan's Court Division[.] [Appellees] thereafter filed this Motion for Summary Judgment. Wells Fargo filed a Cross-Motion for Summary Judgment.

Orphan's Court Opinion, 4/24/15, at 1-3.

On April 24, 2015, the orphan's court entered an order granting Appellees' motion for summary judgment and transferring the situs of the trust to Delaware County for all future proceedings. On May 21, 2015, Wells Fargo filed a timely notice of appeal.[1]

On appeal, Wells Fargo presents the following issues for our review.

1.a. Is Wells Fargo [], entitled to judgment because the provision of Minnie Cassatt's [w]ill permitting beneficiaries to remove a trustee does not apply to the trust created by Alexander Cassatt when he validly and effectively exercised a power of appointment given to him under Minnie Cassatt's [w]ill?

1.b. Are [Appellees] required to comply with the Uniform Trust Act, 20 Pa.C.S. § 7766, to remove Wells Fargo [], as a corporate co-trustee?

2. Did the [o]rphans' [c]ourt improperly transfer the situs of trust?

Wells Fargo's Brief at 2.

_____

[1] The orphan's court did not direct Wells Fargo to file a concise statement of errors complained of on appeal in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), and it did not issue a Rule 1925(a) opinion. The orphan's court filed an opinion accompanying its April 24, 2015 order granting summary judgment.

- 4 -

When reviewing an orphan's court decree, we defer to the court's factual findings that the record supports, but we will reverse if the court's legal conclusions are erroneous. *In re Estate of Hooper*, 80 A.3d 815, 818 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1009 (Pa. 2014), *quoting* **Estate of Pendergrass**, 26 A.3d 1151, 1153 (Pa. Super. 2011). Further, we apply the following principles in our review of the entry of summary judgment.

> Our standard of review of a grant of summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. **Mee v. Safeco Ins. Co. of America**, 908 A.2d 344 (Pa. Super. 2006). Our scope of review is plenary. **Pappas v. Asbel**, 768 A.2d 1089, 1095 (Pa. 2001), *cert. denied*, 536 U.S. 938 (2002). In reviewing a court's grant of summary judgment:
>
>> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> **Chenot v. A.P. Green Services, Inc.**, 895 A.2d 55, 61 (Pa. Super. 2006) (internal citations and quotation marks omitted).

*In re Estate of Moskowitz*, 115 A.3d 372, 385 (Pa. Super. 2015) (parallel citations omitted), *appeal denied*, 130 A.3d 1291 (Pa. 2015).

In its first issue, Wells Fargo contends that the orphans' court erred in granting summary judgment because the thirteenth provision in Minnie's[2] will, permitting the majority of adult beneficiaries to remove the corporate trustee without cause and without court approval, did not survive Alexander's exercise of the power of appointment that Minnie granted him. Wells Fargo's Brief at 17. Instead, Wells Fargo asserts that Alexander created a new trust through the exercise of the power of appointment with only the terms specified in Alexander's will and that the new trust did not have a condition for the removal of the corporate trustee without cause or without court approval. Wells Fargo's Brief at 21.

The following principles guide our interpretation of a will or a trust.

> It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his [or her] intent must be gathered from a consideration of (a) all the language contained in the four corners of his [or her] will and (b) his [or her] scheme of distribution and (c) the circumstances surrounding him [or her] at the time he [or she] made his [or her] will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain[.]

---

[2] Because the parties share a surname, we refer to them by their first names.

*Estate of Culig v. Appeal of Culig*, 134 A.3d 463, 469 (Pa. Super. 2016) (citation and quotation marks omitted). Accordingly, we set forth the relevant provisions of Minnie's will and Alexander's will.

Minnie's will, as amended by the first codicil, bequeathed her residuary estate to three trustees—Alexander, Anthony, and the Pennsylvania Company for Banking and Trusts—to divide equally into two trusts for the benefit of Alexander and Anthony. Minnie Cassatt's First Codicil, 4/15/53, at 1. Minnie's will directed that Alexander receive the income from one of the trusts for life, and Anthony receive the income from the other for life. *Id.* The thirteenth provision of Minnie's will provided that the majority of "the adult beneficiaries then entitled to receive income from any trust hereby created" could remove the corporate trustee without cause and without court approval and appoint a successor corporate trustee. Minnie Cassatt's Will, 4/8/53, at 9. Further, she gave Alexander and Anthony a power of appointment, as follows in relevant part.

> (a) … with power in each of my said sons (whether dying before or after me) to appoint by will the income from and/or the principal of his trust as follows:
>
> … (ii) if one or more descendants of such son shall be living at his death, he may so appoint only to or among his descendants (whether then living or thereafter born), in such shares and for such estates and upon such trusts as he may designate, except that he may appoint any part of the income from such trust to his spouse or to any spouse or spouses of a deceased descendant or descendants of his, for

the life of such spouse or spouses or for any shorter period.

Minnie Cassatt's First Codicil, 4/15/53, at 1.

Alexander, in the first provision of his will, exercised his power of appointment over the principal of the trust Minnie's will created, as follows. Alexander Cassatt's Will, 8/29/78, at 1.[3]

> Whereas, by the terms of the Will of my mother, Minnie F. Cassatt, I am given a special or limited power of appointment over a portion of her residuary estate, I hereby exercise said power as follows: I give and bequeath out of the principal subject to said power the sum of Five Thousand Dollars ($5,000) to each of my daughter, CASSANDRA C. CAREY, and my sons, ROBERT K. CASSATT, 2nd and ALEXANDER J. CASSATT, JR., who survive me; and the balance of said principal shall continue to be held by the surviving Trustee under said Will and the Trustees herein appointed in Paragraph 6 of this Item FIRST, in Trust, subject to all the provisions of Items SEVENTH and NINTH hereof and with all the powers thereby conferred, until the expiration of a period of twenty (20) years after the death of that one of my children who shall have been living at the time of my mother's death and who shall outlive the others; and
>
> 1.   The Trustees shall … pay the net income equally to my grandchildren who may be living from time to time to take and receive the same and in the event of the death of any grandchild prior to the termination of this Trust his or her share of income shall be paid to his or her issue, *per stirpes*.
>
> …

_____

[3] Alexander executed three codicils to his will, but they did not change or revoke the exercise of the power of appointment and have no bearing on the issues in this appeal.

3.     Upon the termination of this Trust at the time hereinabove provided, the Trustees shall divide the principal into as many equal shares as there shall be grandchildren of mine then living plus grandchildren of mine then deceased leaving issue then living; and the Trustees shall distribute one of such shares to each of my then living grandchildren and shall distribute one of such shares, *per stirpes*, to the then living issue of each then deceased grandchild of mine.

…

5.     In the event that my descendants should all become extinct prior to the time hereinabove fixed for the termination of the Trust, I do not further exercise said power of appointment, and I direct that the Will of my mother shall be interpreted as though I had died intestate, unmarried and without issue.

6.     I appoint FRANCIS J. CAREY and ROBERT L. RAST to be co-Trustees to act hereunder with FIRST PENNSYLVANIA BANK N.A., surviving Trustee under the Trust under Will of Minnie F. Cassatt, but if either is unable or unwilling for any reason to serve or to continue to serve as such, or in the event that there should at any time be no individual co-Trustee serving thereunder, I appoint to be designated in writing by the law firm of REED SMITH TOWNSEND & MUNSON or any successor organization thereto.

*Id.* at 1-2.  The seventh and ninth provisions of Alexander's will specify a number of powers that the trustees can exercise "in addition to the general powers vested in them by law[.]"  *Id.* at 3-6.  Alexander's will did not refer to the thirteenth provision of Minnie's will, and its seventh and ninth provisions did not provide that his beneficiaries could remove the corporate trustee without cause at any time.  ***See generally id.*** at 1-7.

"A power of appointment is a power that enables the donee of the power to designate recipients of beneficial ownership interests in or powers of appointment over the appointive property." RESTATEMENT (THIRD) OF PROPERTY (Wills & Donative Transfers) § 17.1 (2011); *accord* 20 Pa.C.S.A. § 7703, cmt. Moreover, the donee of a power of appointment must exercise it by complying with the limits imposed by the donor. *In re Estate of Zucker*, 122 A.3d 1112, 1116-1117 (Pa. Super. 2015). In her will, Minnie created a trust for Alexander for life with a power of appointment for the remainder of the trust. Minnie, as donor, gave Alexander, as donee, the power to appoint in his will the income or principal of the trust to his descendants, his spouse, or a spouse of a deceased descendant, either outright or in trust.[4]

In his will, Alexander appointed a portion of the trust principal to his three children outright and appointed the balance of the trust principal to three trustees to hold in trust for the benefit of his grandchildren and their descendants, subject to the seventh and ninth provisions of his will. Because this appointment complied with the directives that Minnie's will set

---

[4] This power of appointment was special, or non-general, because Alexander could exercise the appointment in favor of only certain specified appointees. *See* RESTATEMENT (THIRD) OF PROPERTY (Wills & Donative Transfers) § 19.14 (2011). Further, it was a testamentary power of appointment as Alexander could exercise the appointment only by his will. *See id.* § 17.4(b).

forth, it was a valid exercise of Alexander's power of appointment. *See Zucker*, *supra*.

Having determined that the exercise of the power of appointment was proper, we now turn to Well Fargo's first issue, whether the trust under Alexander's will contained the same terms as the trust under Minnie's will. The orphan's court concluded that the power to remove trustees without cause and without court approval should be read into Alexander's will because "the trust remained a trust initially created by Minnie [], not a trust created by Alexander." Orphan's Court Opinion, 4/24/15, at 7. As such, the trial court reasoned that "the terms of the appointment by Alexander … are 'read back' into Minnie['s] will as though originally appearing there." *Id.* at 6. For the reasons discussed below, this legal conclusion was erroneous.

Section 7731 of the Pennsylvania Uniform Trust Act, 20 Pa.C.S.A. §§ 7701-7790.3, provides that "[a] trust may be created by … written exercise of a power of appointment in favor of a trustee." 20 Pa.C.S.A. § 7731. The broad scope of the power of appointment in Minnie's will permitted, but did not require, Alexander to set up a new trust for his descendants. Alternatively, he could have ended the trust by appointing the entire principal outright to his descendants, or appointed the income from the trust created by Minnie to his descendants. If he appointed the income from Minnie's testamentary trust to his descendants, this would not create a

different trust, and the terms of Minnie's will and trust would still apply with the same trustees and trustee removal provision.

In this case, Alexander exercised the power of appointment both to bequeath outright a portion of the trust principal to his children and to create a new trust with the remaining principal for the benefit of his grandchildren and their descendants. In creating a new trust, he named two attorneys to serve as trustees along with the corporate trustee from the trust Minnie created for him. As a settlor of a new trust, Alexander was free to choose a different or no corporate trustee. The fact that he chose the same corporation then acting as trustee on Minnie's trust does not incorporate the terms of Minnie's testamentary trust into the new trust he created. The authority to remove trustees from the testamentary trust that Alexander created, through the exercise of his power of appointment, could have been governed by terms Alexander specified in his will. However, Alexander's will does not contain a provision for the removal of trustees. Therefore, the default rule in Section 7766 of the Uniform Trust Act applies. *See* 20 Pa.C.S.A. § 7766 (providing four grounds upon which a beneficiary may petition the court to remove a trustee).

Accordingly, we conclude that the orphan's court erred in granting summary judgment because there was no term in Alexander's will permitting Appellees without cause and without court approval to remove Wells Fargo as trustee. Further, Appellees did not petition the orphan's court for the

removal of Wells Fargo under Section 7766. Thus, Wells Fargo shall remain as the corporate trustee. However, our decision is without prejudice to Appellees' right to petition for the removal of Wells Fargo as trustee, if appropriate, under Section 7766 after remand.

In its second issue, Wells Fargo contends that the orphan's court erred in transferring the *situs* of the trust *sua sponte* because the statute governing situs changes does not authorize the court to act *sua sponte*. Wells Fargo's Brief at 46. In their brief, "Appellees take no position on this issue." Appellees' Brief at 1. "A challenge to the court's interpretation and application of a statute raises a question of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." **In re A.B.**, 987 A.2d 769, 773 (Pa. Super. 2009) (citations and internal quotation marks omitted), *appeal denied*, 12 A.3d 369 (Pa. 2010).

Subsection 7708(g) provides the following rule for a change in situs.

> **(g) Court-directed change in situs.--**A court having jurisdiction of a testamentary or *inter vivos* trust, on application of a trustee or any party in interest, after notice as the court shall direct and aided if necessary by the report of a master and after accounting as the court shall require, may direct, notwithstanding any other provision of this chapter, that the situs of the trust shall be changed to any other place within or without this Commonwealth if the court shall find the change necessary or desirable for the proper administration of the trust.

20 Pa.C.S.A. § 7708(g). Thus, subsection 7708(g) states that an orphan's court may change the situs "on application of a trustee or any party in interest," after notice to the parties. *Id.* Here, the orphan's court was not presented with an application to change situs. Instead, the orphan's court directed the transfer of situs on its own motion in its order granting summary judgment. Subsection 7708(g) does not authorize such *sua sponte* transfer of situs without notice to the parties and an express finding that the change is "necessary or desirable." *Id.* Accordingly, we conclude the trial court erred in *sua sponte* directing the change of situs and reverse that portion of the trial court's April 24, 2015 order.[5]

Based on the foregoing, the orphan's court erred as a matter of law in granting summary judgment to Appellees based on their contention that the terms of Minnie's testamentary trust carried over to the trust Alexander created through his power of appointment. ***See Estate of Culig***, ***supra***. Accordingly, we reverse the orphan's court's April 24, 2015 order granting summary judgment and transferring the situs of the trust to Delaware County. Moreover, the orphan's court did not dispose of Wells Fargo's cross-motion for summary judgment, so we remand for further proceedings in accordance with this memorandum.

_____

[5] Our decision is without prejudice to the ability of the trustees or Appellees to petition the orphan's court for a change in situs in accordance with Subsection 7708(g).

- 14 -

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016